**JACKSON RAPID DELIVERY SERVICE, INC., Plaintiff,**

v.

**JONES TRUCK LINES, INC., and Jerry Waltman, Defendants.**

Civ. A. No. E85–0132(L).

United States District Court, S.D. Mississippi, E.D.

Feb. 15, 1986.

---

1. *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1212 (9th Cir.1980).

Ronnie L. Walton, Meridian, Miss., for plaintiff.

Charles J. Mikhail and James C. Mingee, Krogstad, Johnson, Mingee & Wood, Jackson, Miss., for defendants.

## MEMORANDUM OPINION

TOM S. LEE, District Judge.

This cause came before the court for trial and the court heard testimony from witnesses and reviewed exhibits admitted in evidence. Plaintiff Jackson Rapid Delivery Service, Inc. (Rapid Delivery) initiated this action in the Chancery Court of Lauderdale County, Mississippi, alleging in its complaint that the action of defendant Jones Truck Lines, Inc. (Jones) in terminating its drayage contract with Rapid Delivery constituted fraud and breach of fiduciary duties and violated the contract principle of promissory estoppel under Mississippi law. The action was removed to this court by Jones pursuant to 28 U.S.C. § 1441.[1] Upon a review of the evidence adduced at the non-jury trial, the court makes the following findings of fact and conclusions of law.

On January 9, 1979, the parties entered into a contract whereby Rapid Delivery was to serve as Jones' agent in operating a freight business in Meridian, Mississippi. David Watkins, the son of Rapid Delivery's president A.L. Watkins, was placed in charge of the Meridian operation. Under the terms of the contract, Rapid Delivery was to provide a terminal facility for the handling of industrial accounts and common carrier service engaged in by Jones. The contract contained no provision barring Rapid Delivery from entering into competing drayage contracts. Critically for purposes of this case, however, the contract did contain a provision allowing either par-

1. Rapid Delivery had originally joined a Mississippi resident, Jerry Waltman, as a named defendant and sought damages against him for tortious interference with employment relations in violation of Miss.Code Ann. § 97–23–29 (1972). Waltman was dismissed by agreement of the parties before trial and there were no further jurisdictional questions raised.

ty to terminate the contract upon 30–days' written notice.

From 1979 to 1984, Rapid Delivery experienced substantial growth in the level of its delivery business. To accommodate the increase, Rapid Delivery moved into larger facilities on two occasions. In 1984 Jones began using double or tandem trailers across Mississippi pursuant to a new law passed by the Mississippi Legislature allowing such use. No facilities were available for lease in the Meridian area which could accommodate tandem rigs. Thus, in the summer of 1984, David Watkins determined that Rapid Delivery would have to build a new terminal facility on its own to handle the new demands on its service. At no time did Jones request, demand or require that Rapid Delivery build a new terminal for its Meridian operation. However, Rapid Delivery takes the position that it had the responsibility of providing employees and facilities for the use of Jones under the contract, and that such contractual obligation demanded the construction of a new terminal facility.

David Watkins testified at trial that he was aware at all times of the existence of the 30–days' cancellation provision in the agency contract. To assure himself that the provision would not be utilized by Jones after the new terminal was constructed, Watkins contacted several corporate officials of Jones to discuss the prospect of building the new terminal. Jett Jones, a representative of Jones stationed in Jackson, Mississippi, told Watkins that he knew of no problems with Rapid Delivery's performance or any plans to cancel the contract. He cautioned Watkins that he had no authority to verify Jones' long-range intentions or to say that the contract would not be cancelled in the future. Watkins then contacted Rick Johnson, Jones' Vice-President of Administration, who also told him that he did not know of any problems or of plans to cancel the contract. Still seeking assurances, Watkins next called Robert Elmer, then Senior Vice-President of Financial Administration and the individual within Jones' corporate structure with whom Watkins had the closest working re-

lationship, to discuss the new building. Testimony at trial revealed that the substance of the Watkins-Elmer conversation was as follows: that Elmer refused Watkins' request that Jones finance the construction of the facility; that Elmer knew of no immediate plans to cancel the contract; that Elmer knew of no complaints or problems Jones was experiencing concerning the Meridian operation; that Elmer counseled Watkins to be cautious about building a terminal in sole reliance on the contract with Jones; and that Watkins told Elmer that construction of the terminal would be a good investment in light of Rapid Delivery's other customers. It was undisputed at trial that these conversations took place before Watkins engaged a contractor to construct the new terminal.

Acting in reliance upon these conversations with Jones' officials, Watkins undertook at the sole expense of Rapid Delivery to build a terminal and warehouse in Meridian to accommodate tandem rigs. The cost of construction was $108,570.00. The terminal was completed and occupied on December 1, 1984.

On February 4, 1985, Jones sent Watkins written notice that it was cancelling the Rapid Delivery contract. By letter dated February 13, 1985, Rapid Delivery acknowledged receipt of the February 4 cancellation letter and indicated that it was accepting the cancellation. Shortly thereafter, however, it came to the attention of Rapid Delivery that in testimony before the Mississippi Public Service Commission on October 25, 1983, John R. Karlberg, President of Jones, stated, "We intend to convert Meridian to a company operation, which is not due to any dissatisfaction with that particular agent, but that is our standard procedure." David Watkins testified at trial that at no time during the discussions concerning the building of a new terminal in Meridian did Jones' employees indicate that the intention of Jones was to convert Meridian to a company operation. David Watkins and his father, A.L. Watkins, further testified that they would not have undertaken the risk of investing in a new

terminal if they had been made aware of Karlberg's statement of the company's intentions regarding the Meridian operation. The filing of the complaint in this cause followed accordingly.

Following the non-jury trial in this cause, the court requested that the parties submit post-trial briefs of authorities. The parties' briefs indicate some confusion and disagreement concerning the central legal issues presented by the evidence. Plaintiff's brief relies almost solely on the theory that a fiduciary relationship existed between the parties, and that Jones' cancellation of the contract constituted a breach of the duties arising out of such fiduciary relationship. Defendant's brief focuses on the absence in the proof of the elements which give rise to promissory estoppel under Mississippi law. Defendant devotes no discussion to the existence *vel non* of a fiduciary relationship between the parties. The court will address the theories of liability individually.

## FIDUCIARY RELATIONSHIP

Rapid Delivery contends that as a result of the drayage contract and the course of dealing associated with it, a fiduciary relationship existed between the parties. Because of the relationship, Rapid Delivery further contends that the parties had a duty to deal in good faith with each other independent of their respective duties as defined in the contract. This fiduciary duty to deal in good faith was assertedly breached when Jones failed to disclose to plaintiff its plans to convert Meridian to a company operation and allowed Rapid Delivery to go forward with its construction plans.

In *Carter Equipment Co. v. John Deere Industrial Equipment Co.*, 681 F.2d 386 (5th Cir.1982), the Fifth Circuit held that under Mississippi law a fiduciary relationship may exist between parties to a contract under certain circumstances. Relying on two Mississippi Supreme Court cases, *Parker v. Lewis Grocery Co.*, 246 Miss. 843, 153 So.2d 261 (1963), and *Risk v. Risher*, 19 So.2d 484 (Miss.1944), the court recognized that fiduciary obligations may

arise outside the conventional boundaries traditionally indicating the existence of a fiduciary relationship, even though the parties' underlying relationship is contractual. 681 F.2d at 390. At the outset, the court stated that "[t]he existence or nonexistence of a fiduciary relationship between parties is a question of fact for the jury." *Id.* To guide the jury in determining when a contractual relationship has given rise to a fiduciary relationship, *Carter Equipment* set out the following factors: (1) whether the activity of the parties goes beyond their operating on their own behalf and the activity is for the benefit of both; (2) whether the parties have a common interest and profit from the activities of the other; (3) whether the parties repose trust and confidence in one another; and (4) whether one party has the power to control or dominate the other. *Id.* at 390, 391 (citations and quotations omitted).

Assuming *arguendo* that the first three *Carter Equipment* factors were in place in the relationship between Rapid Delivery and Jones, the court stumbles over the absence of the last factor. It is noteworthy that *Carter Equipment* concerned a franchisor-franchisee relationship, wherein the franchisee was completely dependent on the good faith of the franchisor in whatever profit he gleaned in his business. In this case, although David Watkins testified that he was discouraged by Jones' management from entering other drayage contracts with competitors of Jones, the contract did not contain any provision prohibiting competing contracts. As an agent rather than a franchisee of Jones, Watkins was free to engage in other drayage business provided it would not hamper his ability to perform the services under the Jones contract. Testimony at trial established that Rapid Delivery was only earning between $500.00 to $700.00 per month on the Jones contract. It is impossible for this court to deduce from the evidence that the sort of power and domination envisioned in *Carter Equipment's* assessment of a franchise arrangement existed here, given the flexibility offered Rapid Delivery under the

contract and the illogic of assuming that Rapid Delivery was relying solely on the meager profits from the Jones contract in conducting its business. As was stated in *Carter Equipment*, "If both parties stand on equal or nearly equal footing, there is less likelihood a fiduciary relationship exists, since equity will not be necessary to protect a party." *Id.* at 391.

Moreover, in defining what constitutes a breach of any such fiduciary duties, the Fifth Circuit has indicated that it will defer to the terms and obligations set out in the underlying contract. The court stated in *Carter Equipment:*

> If the parties, in seeking their individualized interest, comply with the terms of a contract in which they are both also parties, it would be difficult to find a breach of a fiduciary duty. Although fiduciaries have mutual interests, they also have individualized goals. If part of their relationship is set out in a contract, the parties have affirmatively recognized, in part, those individual interests. Unless the contractual terms are unconscionable, illegal, or violative of public policy, fiduciaries, as a practical matter, acknowledge that activity in conformance with the terms of a contract cannot amount to misconduct that constitutes a breach of fiduciary duty. *See generally Corenswet, Inc. v. Amana Refrigeration Co., Inc.*, 594 F.2d 129 (5th Cir.), *cert. denied* 444 U.S. 938 [100 S.Ct. 288, 62 L.Ed.2d 198] (1979).

*Id.* at 392 n. 14.

In *Corenswet*, plaintiff was a wholesale distributor of appliances who had for seven years prior to suit been Amana's exclusive distributor in southern Louisiana. The contract between the parties had a standard form termination provision allowing termination by either party at any time and for any reason on ten days' notice. 594 F.2d at 131–32. Amana terminated the contract because Corenswet could not provide minimum security to sustain a pattern of growth, and Corenswet filed suit alleging that the termination was arbitrary. *Id.* at 132–33. While plaintiff relied on Iowa law

and the provisions of the Uniform Commercial Code utilizing usage of trade and course of dealing to aid in construing the intent of contracting parties, rather than the law of fiduciaries, the Fifth Circuit held:

> In this case, however, no reasonable construction can reconcile the contract's express terms with the interpretation Corenswet seeks to glean from the conduct of the parties. The conflict could not be more complete: Amana's past conduct, with regard to both Corenswet and to its other distributors, may have created a reasonable expectation that Amana would not terminate a distributor arbitrarily, yet the contract expressly gives Amana the right to do so. We can find no justification, except in cases of conduct of the sort giving rise to promissory estoppel, for holding that a contractually reserved power, however distasteful, may be lost through nonuse. The express contract term cannot be construed as Corenswet would constitute it, and it therefore controls over any allegedly conflicting usage or course of dealing.

*Id.* at 136.

In a recent case, *Walker v. U–Haul Co. of Mississippi*, 734 F.2d 1068 (5th Cir.1984), which dealt with fiduciary obligations between parties to a franchise contract, the court indicated that *Corenswet* had continuing vitality and relevance in determining the scope of a fiduciary relationship even after *Carter Equipment*. In *Walker*, the court stated that *Carter Equipment* "specifically excepted, however, claims for breach of fiduciary duty grounded on conduct authorized by the provisions of a contract ... [*Corenswet* ] held that a manufacturer may act arbitrarily in terminating a business relationship with a distributor, if arbitrariness is authorized by a contractual provision." 734 F.2d at 1075.

 Thus it is clear that contractual provisions such as the one at issue here are not only relevant to but determinative of the scope of an alleged fiduciary relationship. The duty of good faith and fair dealing inherent in a fiduciary relationship

yields to the definition of the parties' duties contained in the contract, so long as the contract's terms are not unconscionable. The evidence at trial established that at no time did David Watkins request a modification or withdrawal of the cancellation provision. The court is of the opinion that the cancellation provision was not unconscionable or void as against public policy. Jones' exercise of the right granted in the cancellation provision was not a breach of any arguable fiduciary duty it had to Rapid Delivery.

The court concludes, therefore, that no fiduciary relationship as defined in *Carter Equipment* existed between Jones and Rapid Delivery as a result of their contract and conduct. The court further concludes that any such fiduciary duties as assertedly existed between the parties were not breached by Jones' cancellation of the contract upon 30–days' notice pursuant to the cancellation provision of the contract.

### PROMISSORY ESTOPPEL

Rapid Delivery asserts that the course of conduct between the parties and the assurances it received from Jones' employees that there were no immediate plans to cancel the agency contract induced detrimental reliance on its part, and that Jones therefore should be estopped from exercising its right of cancellation under the contract. In legal terms, Rapid Delivery contends that a modification of the contract was reached between the parties, with Rapid Delivery's detrimental reliance on Jones' assurances serving as a substitute for the consideration necessary to constitute a binding contractual modification. *See generally* 17 Am.Jur 2d, *Contracts*, § 465–66.

In *Crowe v. Fotiades*, 224 Miss. 422, 80 So.2d 478, 486 (1955), the Mississippi Supreme Court set out the elements of promissory estoppel under Mississippi law:

> The essential elements of estoppel are conduct and acts, language or silence, amounting to a representation or concealment of material facts, with knowledge or imputed knowledge of such facts, *with the intent that representation or si-lence, or concealment be relied upon,* with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence.

(emphasis added). *See also McAlister v. McAlister,* 254 Miss. 877, 183 So.2d 513 (1966); *Harris v. American Motorist Ins. Co.,* 240 Miss. 262, 126 So.2d 870 (1961).

■ A plaintiff seeking to establish the existence of promissory estoppel under Mississippi law has the burden of proving the existence of all elements. "Every fact essential to an estoppel must be clearly and satisfactorily proved by a preponderance of the evidence. Where the evidence is evenly balanced, the burden of proof is not sustained." *Marshall v. Marshall,* 243 Miss. 472, 138 So.2d 482, 483 (1962). The evidence must show that the concealment of facts relied upon to sustain estoppel must have been made with knowledge of the facts by the party to be estopped, or it must be shown that such party was grossly negligent in failing to know the true facts. *Resolute Ins. Co. v. State,* 290 So.2d 599, 602 (Miss.1974). Where the parties are equally informed as to the essential facts, or the means of gaining knowledge of the facts is open to both parties, there can be no finding of estoppel. *Barnett v. Getty Oil Co.,* 266 So.2d 581, 587 (Miss.1972). Lastly, and most crucially for the instant case, the representation or concealment relied upon as the basis for estoppel must relate to the *present* intention or purposes of the party to be estopped, because a party cannot be precluded from changing his intention in the future. *See Southeastern Sales and Service Co. v. T.T. Watson, Inc.,* 172 So.2d 239 (Fla.1965); 28 Am. Jur.2d, *Estoppel and Waiver,* § 46.

■ A simple review of applicable Mississippi law fairly eliminates the need of further analysis. Rapid Delivery offered no proof that the Jones employees who discussed with David Watkins the plans for a new terminal had any *intent* to induce his reliance on their representations. Watkins' own testimony reveals that he could not receive any unequivocal assurances that the contract would not be canceled.

Indeed, Robert Elmer, a senior officer with Jones and the person with whom Watkins had the closest working relationship within the company, advised Watkins to be cautious and not to rely solely on the agency contract in planning the new terminal. As a practical matter, Jones had nothing to gain by inducing detrimental reliance by Watkins on the longevity of the contract, and then cancelling the contract upon completion of the terminal. The evidence at trial was simply insufficient to prove that Jones' employees had any intent to deceive Watkins in their communications with him concerning the new terminal.

With reference to the October 1983 testimony of John Karlberg before the Public Service Commission, the court would note that such testimony was a matter of public record to which Rapid Delivery had access and in which, indeed, it had an obvious interest. In this regard, the proof showed that Rapid Delivery was at all times aware that Jones had converted agency operations to company operations on a number of occasions across Mississippi in the 1979–84 period. In fact, David Watkins testified that he had been cautioned by his father not to rely on the big trucking companies, that "they'll pull the rug out from under you." From the evidence it appears that Jones' decision to convert Meridian to a company operation was based on three major considerations: (1) Jones' plans to expand its business throughout east Mississippi and west Alabama, which expanded business could not be handled through the Meridian agency operation; (2) the fact that David Watkins had moved from Meridian to Jackson, Mississippi to assume new duties with Rapid Delivery; and (3) a loss of profits from the Meridian operation in 1984. In sum, the court concludes that Rapid Delivery was not justified in relying on the conversations with Jones' employees to the effect that the contract would not be cancelled, because the parties were or should have been equally aware of the same essential facts indicating the future intention of Jones to convert Meridian to a company operation.

To the extent that the representations of Jett Jones, Rick Johnson and Robert Elmer were relied upon by David Watkins, the substance of those representations related only to Jones' *present* intention, as of the summer and fall of 1984, not to cancel the contract. Besides the testimony of Karlberg before the Public Service Commission, which evidenced only a vague, long-range plan to convert Meridian to a company operation, plaintiff offered no proof that representations made by Jones' employees were false as of the time they were made. At the time they were made the statements accurately reflected the intention of Jones to maintain the agency contract and the fact that there were no immediate plans to cancel the contract. Such statements did not constitute assurances or promises that Jones would not in the future exercise its right under the contract to cancel at any time upon 30-days' written notice. As accurate representations of Jones' present intentions, these statements cannot form the basis for equitable estoppel. For the same reason, the statements cannot form the basis for Rapid Delivery's claim of fraud, which this court dismisses without further comment.

## CONCLUSION

In summary, the court concludes that the proof offered at trial was insufficient to establish the elements of a fiduciary relationship or promissory estoppel under Mississippi law. The court recognizes the plaintiff's frustration with the unfortunate timing of Jones' decision to cancel the agency contract, but the court cannot rewrite the contract or void the operation of the cancellation provision except upon a strong showing of fraud or other vexatious conduct on the part of Jones. The evidence simply did not establish such a showing.

Accordingly, this court is of the opinion that plaintiff's complaint should be dismissed with prejudice. A separate judgment shall be submitted according to the local rules.