**SOUTHERN MORTGAGE COMPANY, Plaintiff,**

v.

**Richard W. O'DOM, Defendant.**

**Civ. A. No. E86–0121(L).**

United States District Court,
S.D. Mississippi, E.D.

Aug. 11, 1988.

Thomas L. Webb, Bourdeaux & Jones, Meridian, Miss., for plaintiff.

Kenneth A. Rutherford, Thomas, Price, Alston, Jones & Davis, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff Southern Mortgage Company (SMC) for summary judgment as to all issues in this cause pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant Richard W. O'Dom timely responded to the motion and the court has considered the memoranda of authorities together with attachments submitted by the parties.

SMC instituted this action seeking recovery from defendant of $500,000, together with interest and attorney's fees, based on a promissory note executed by O'Dom. By its terms, the note became due 180 days following its execution on February 18, 1986. Upon O'Dom's failure to pay as provided in the note, SMC brought this action to collect the amount owed. O'Dom responded by denying any right of recovery in SMC and asserting affirmatively that the note is void as it was procured by fraud and that SMC is estopped from recovery by its actions. As the basis for these defenses, O'Dom admits that he indeed executed the promissory note to SMC, but claims that at the time he signed the note, it was his understanding, based on oral assurances from Paul Broadhead, owner and president of SMC, that the note "would not be called at its expiration date but could be renewed until O'Dom had obtained enough money to pay the note off. In the alternative, O'Dom could, at his option, not pay the note at all if his financial condition did not allow repayment." By way of counterclaim and set-off, O'Dom seeks recovery from SMC of one million dollars compensatory damages and five million dollars punitive damages, charging SMC with fraud, breach of its fiduciary duty to O'Dom, breach of contract, breach of the duty of good faith and fair dealing and abuse of process. On this motion for summary judgment, SMC seeks judgment in its favor on all claims raised by both its complaint and the counterclaim of O'Dom.[1] The pri-

---

1. In addition to the counterclaim asserted against SMC, O'Dom brought a third-party complaint against Paul Broadhead seeking recovery over against Broadhead by way of set-off for any judgment obtained by SMC on the underlying action. The third-party complaint was dismissed by this court by memorandum opinion

mary question for consideration by the court on this motion is whether the representations by SMC, through its agent, Broadhead, if in fact made, amount to fraud which would enable O'Dom to escape the repayment obligation otherwise imposed by the note.

■ This court has previously held that the alleged representation by Broadhead was a promise as to a future event. A claim of fraud may not be based on a promise to perform an act in the future or on a representation as to future matters because there is no right to rely on such statements, unless a relation of trust and confidence exists between the parties or unless the speaker, at the time of making the representations, had the "present undisclosed intention not to fulfill his promises." *Davidson v. State Farm Fire and Casualty Co.*, 641 F.Supp. 503, 512 (N.D. Miss.1986); *see also Kidd v. Kidd*, 210 Miss. 465, 49 So.2d 824 (1951). As this court recognized in its previous opinion, O'Dom did not allege that Broadhead, at the time of making the alleged representation, had an intention not to perform as promised. Even assuming that to be the case, however, the claim of fraud must fail for an even more fundamental reason.

■ Under Mississippi law, a claim of fraud requires proof, by clear and convincing evidence, of each of the following elements: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury." *Franklin v. Lovitt Equipment Co., Inc.*, 420 So.2d 1370, 1373 (Miss.1982). Most troubling in the case at bar is the reliance element, or the lack of reliance. The cases make it clear that not only must the party claiming fraud have relied on the allegedly false statement, but his reliance must have been reasonable and, more importantly for our

purposes, his reliance must have been to his detriment.

[Running] deep in our law is the notion that a person must respond where his statements or conduct *reasonably induce another to rely to his detriment.* *Berkline Corporation v. Bank of Mississippi*, 453 So.2d 699, 702 (Miss.1984) (emphasis supplied); *see also First American National Bank of Iuka v. Mitchell*, 359 So.2d 1376, 1379–80 (Miss.1978) (bank's liability for misrepresentation of its officers limited to acts and representations made by officer within scope of authority when they are proved to have been relied on to detriment of plaintiff).

■ Even if one could assume that O'Dom, in signing a note and accepting the $500,000, reasonably believed that he would never be required to repay the money, it nevertheless appears that the element of detriment, that is, reliance to O'Dom's detriment, is wholly lacking. In essence, O'Dom asserts that he relied on the assurances of Broadhead in signing the note and accepting the money. Had he known he would actually be required to repay the bank, he would not have borrowed the money from SMC but would have obtained financing elsewhere. He needed the money, yet claims he could have gotten it from another lending institution. In the court's view, O'Dom's acceptance of the $500,000 evidenced by the note can hardly be characterized as detrimental, given his assertion that he was in desperate need of the money. That SMC now wishes that he repay the loan in accordance with the terms of the note is likewise difficult to reconcile with the claim of detrimental reliance. There has been no showing by O'Dom that he could have obtained the money on more favorable terms than those offered by SMC in terms of time for repayment, interest rate, etc. Certainly he has made no claim that another lending institution would have simply given him money without requiring that he repay it. O'Dom's contentions strain the bounds of logic and those of the law. Accordingly, his claim for fraud must fail. For the same reason, O'Dom's claim

and order dated September 10, 1987, 699 F.Supp. 1223.

that Southern Mortgage Company is estopped to seek recovery on the note based on Broadhead's assurances is without merit, since promissory estoppel, like fraud, requires proof of detrimental reliance. *See PMZ Oil Co. v. Lucroy,* 449 So.2d 201, 206 (Miss.1984) (estoppel requires change of position in reliance upon conduct of another and suffering of detriment caused by change of position). To establish the existence of promissory estoppel under Mississippi law, it is also essential that the representation relied upon must relate to a present intention or purpose of the party to be estopped, because a party cannot be precluded from changing his intention in the future. *Jackson Rapid Delivery Service, Inc. v. Jones Truck Lines, Inc.,* 641 F.Supp. 81, 86 (S.D.Miss. 1986). Neither of these elements being present in this case, O'Dom's estoppel argument cannot excuse his obligations on the note.

■ In support of his charge that SMC breached a fiduciary duty, a duty to treat him fairly and in good faith, O'Dom has recounted a history of friendship and business dealings with Broadhead, SMC's owner. According to O'Dom, because of his relationship with Broadhead, based on a lifelong friendship and history of business associations, SMC, in the loan transaction, stood in a position of trust and confidence with O'Dom.

In *Carter Equipment Company v. John Deere Industrial Equipment Company,* 681 F.2d 386 (5th Cir.1982), the Fifth Circuit set out four factors which may provide evidence that a fiduciary relationship has arisen in a particular transaction: (1) whether the activity of the parties goes beyond their operating on their own behalf and the activity is for the benefit of both; (2) whether the parties have a common interest and profit from the activities of the other; (3) whether the parties repose trust and confidence in one another; and (4) whether one party has the power to control or dominate the other. *Id.* at 390, 391; *see also Jackson Rapid Delivery Service,* 641 F.Supp. at 84. O'Dom urges that in this loan transaction, both he and SMC stood to

benefit; O'Dom was to obtain the money he needed and SMC was to be rewarded for making the loan with interest on its money. However, if one were to accept as true O'Dom's allegation that Broadhead, and hence SMC, assured him the money need not be repaid, then clearly there was no benefit to SMC. That is, if O'Dom were never to repay the loan, as he asserts was and is his right, then SMC would never receive repayment of principal or interest on its money. Furthermore, there is nothing to indicate that SMC had an interest in and/or stood to profit from the activities of O'Dom, nor vice versa.

■ Similarly, O'Dom's contention that Southern, "as the lender holding all the marbles," had the power to dominate and control O'Dom by virtue of SMC's "economic power over O'Dom" overlooks a contrary assertion by O'Dom that "although other sources of financing were available to O'Dom ..., O'Dom went to his lifelong friend [Broadhead] first." Thus, O'Dom, by his own admission, was under no compulsion to deal with SMC and was free to seek financing elsewhere. Under these circumstances, one could not reasonably conclude that SMC had the sort of power and domination contemplated by the court in *Carter Equipment. See Jackson Rapid Delivery,* 641 F.Supp. at 84.

■ The final element established in *Carter Equipment* as tending to indicate a fiduciary relationship is "trust and confidence by one party in the integrity and fidelity of the other." Although O'Dom claims that the "trust and confidence" he reposed in his friend Broadhead is "evident," in the court's view, the contrary appears. According to O'Dom, he and Broadhead had been friends since their boyhood days. Their families had done business together and had been close social acquaintances, and O'Dom and Broadhead had assisted each other in various ways for over forty years. O'Dom alleges that as a result of their close friendship, there "developed a relationship of trust and confidence." The loan, he claims, was based upon this trust and confidence O'Dom placed in Broadhead because of the

close association between the two. Yet in his counterclaim against SMC and brief in opposition to SMC's motion for summary judgment, O'Dom described certain business dealings with Broadhead, commencing in December of 1983 and continuing through the time of O'Dom's execution of the promissory note at issue, in which Broadhead "underhandedly took over, at O'Dom's great loss, the two largest sources of O'Dom's income[.]" According to his description, set forth in detail in this court's prior memorandum opinion, Broadhead forced O'Dom to transfer his ownership interest in the First United Bank of Meridian to Broadhead and Broadhead subsequently, by threats, forced the sale of an insurance company owned by O'Dom, Financial Security Life of Mississippi, to Broadhead at a price substantially below the market value of the insurance company. This, according to O'Dom, amounted to Broadhead's taking "O'Dom's primary source of income without any payment." Further, O'Dom charges that Broadhead, at the time of acquiring the bank and the insurance company, agreed to pay substantial management and consulting annual fees to O'Dom, yet reneged on that promise.[2] In his counterclaim against SMC, O'Dom recites that

*because of the defalcations and misdeeds of Broadhead, O'Dom's financial condition deteriorated to the extent that he had to borrow money to meet obligations and to rebuild his business.* When O'Dom discussed this matter with Broadhead, Broadhead offered to let O'Dom have $500,000 to help him meet his obligations. When O'Dom obtained the $500,000 from Broadhead in February, 1986, it was with the understanding that any note signed by O'Dom would

not be called at its expiration but it could be renewed until O'Dom had obtained enough money to pay the note off. In the alternative, O'Dom could, at his option, not pay the note at all if his financial condition did not allow repayment (emphasis supplied).

Moreover, in a memorandum submitted by O'Dom opposing the motion of Broadhead to dismiss the third-party complaint, the following appears:

O'Dom claims in his Third–Party Complaint against Broadhead and in his counterclaim against Southern Mortgage that *his borrowing of money from Southern Mortgage was necessitated by Broadhead's and Southern Mortgage's breach of fiduciary duties, breach of contract, breach of duty of good faith and fair dealing and fraud in their business and contractual dealings with O'Dom* (emphasis supplied).

The close friendship alleged by O'Dom had thus apparently deteriorated significantly before the loan transaction. Under the circumstances and facts *as alleged by O'Dom,* there was absolutely no basis for his having "trust and confidence in his friend Broadhead, and Broadhead's company, Southern [.]"[3] The court is of the opinion that none of the factors indicative of a fiduciary relationship is present in the case at bar. And, while the determination of whether a fiduciary relationship exists is typically a question of fact for the jury, *Carter Equipment,* 681 F.2d at 390, there is insufficient evidence from which a jury could reasonably find the existence of such a relationship. Accordingly, O'Dom's claim for breach of fiduciary relationship fails as a matter of law and of fact.[4]

**2.** In connection with the sale of O'Dom's interest in First United Bank in 1983, Broadhead allegedly agreed to pay O'Dom $250,000 per year as consulting fees for assistance in the management and administration of First United Bank. O'Dom further alleged that Broadhead agreed in 1984 to pay him $250,000 annually for management of Financial Security, once Broadhead acquired ownership. No payments were ever made.

**3.** Although O'Dom now claims that he was unaware of Broadhead's misdeeds prior to the

time he approached Broadhead for the purpose of obtaining a loan, O'Dom is bound by the allegations contained in his complaint and will not be permitted to manipulate and create disputed issues of fact as it suits him to avoid summary judgment.

**4.** Although O'Dom has cited cases in which lending institutions have been held to occupy a fiduciary status relative to their clients or customers, those cases have gone beyond a mere debtor/creditor relationship and have typically involved mortgagor/mortgagee relationships

O'Dom's final claim, for abuse of process, is premised upon an allegation that SMC was aware that the note was not to be called when due based on the alleged assurances by Broadhead. In the court's opinion, this claim is obviously inadequate to withstand the present motion for summary judgment. The note on which SMC seeks to recover is clearly delinquent and there is nothing on the face of the note to indicate otherwise. Moreover, the court has heretofore held that O'Dom is not excused from payment of the note based on any of the various defenses or claims alleged by him. Accordingly, the filing of this lawsuit to obtain payment on the note is not, and could not be, considered an abuse of process.

Inasmuch as each of the defenses asserted and affirmative matters alleged by O'Dom to excuse payment of the note have been considered by the court and held inadequate as a matter of law, it follows that SMC's motion for summary judgment on its complaint for recovery on the note itself is well taken and should be granted.[5]

Accordingly, it is ordered that plaintiff's motion for summary judgment is granted; plaintiff is entitled to judgment against the defendant in the sum of $500,000, together with interest at a rate of eleven percent per annum as provided in the contract and attorney's fees in the amount of ten percent of the principal and interest, also as provided in the note executed by the defendant, and defendant's counterclaim will be dismissed with prejudice. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

and are otherwise distinguishable. *See First American National Bank of Iuka v. Mitchell*, 359 So.2d 1376, 1380 (Miss.1978) (mortgagor/mortgagee relationship already in existence at time of alleged active fraud and misrepresentation by bank officer). In any event, O'Dom's claim that a fiduciary relationship existed in the loan transaction is based not upon his status as a client of SMC but rather as a lifelong friend and business acquaintance of Broadhead, SMC's president.

5. In *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1361, 89 L.Ed.2d 538 (1986), the Supreme Court, in considering a claim of an antitrust conspiracy, held that "the absence of any plausible motive to engage in the conduct charged is highly relevant to whether a 'genuine issue for trial' exists within the meaning of Rule 56(c)." The motive which O'Dom attributes to Broadhead's alleged fraudulent representation is revealed in his affidavit submitted in response to this motion for summary judgment:

"He just wanted to ruin me, for reasons only known to him."

Whether this vague assertion could be construed as a "plausible" explanation of Broadhead's motivation for his allegedly attempting to deceive O'Dom is highly questionable and lends support to this court's conclusion that summary judgment is in order.