CROWE, et al. *v.* FOTIADES, et al.

No. 39450 May 23, 1955 80 So. 2d 478

*Hedgepeth, Ewing & Hedgepeth,* Jackson, for appellants.

*Watkins & Eager,* Jackson; *Frank Clark,* Waynesboro, for appellees.

430

ROBERDS, P. J.

This proceeding involves the question of ownership of one half of the minerals and mineral rights in three hundred and twenty acres of land located in Wayne County, Mississippi.

Appellants claim to be the owners, in the respective interests shown by the pleadings, under a deed dated April 11, 1932, executed by E. N. Ahlfeldt, trustee in bankruptcy of The Brown Lumber Company, an Arkansas corporation, to J. R. Crowe, purporting to convey fee simple title to said lands.

Appellees claim title through a patent issued by the State of Mississippi to James B. Sigler to one hundred and sixty acres of the land and a patent issued to Mrs. S. B. Dawes to the other one hundred and sixty acres, both patents being dated November 18, 1940, and also through a quitclaim deed, dated March 24, 1952, executed by The Brown Lumber Company, a Mississippi corporation, to James B. Sigler and Mrs. S. B. Dawes, purporting to convey to these two parties the lands included within their respective patents.

The chancellor held that Sigler and Mrs. Dawes and their grantees owned the mineral interests constituting the subject of this litigation, from which decree this appeal was taken.

The land sold to the State of Mississippi April 6, 1931, for nonpayment of taxes for the year 1930. The bankrupt court in custody and charge of the assets of The Brown Lumber Company, a corporation under the laws of Arkansas, held certain negotiations and agreements with the officials of the State of Mississippi and Wayne County, and the bankrupt court, by order, adjudicated said tax sale to be void and the taxes were paid to the State of Mississippi, all as shown hereinafter. Appellants say that these acts and proceedings nullified and rendered void said tax sales to the State of Mississippi. On the other hand, appellees urge that, for the reasons hereinafter stated and discussed, said tax sales were,

and remained, legal and effective to vest in the State title to said land, and the above mentioned patents from the State vested in the patentees and their grantees a good title thereto.

Appellees first say the state and county officials of Mississippi had no power or authority to negotiate, settle and adjust the taxes, and the Arkansas bankrupt court had no jurisdiction of the subject matter.

The Brown Lumber Company was created a corporation under the laws of Arkansas April 5, 1913, with its domicile at Fordyce, said state. It qualified to do business in Mississippi April 21, 1913. It had its office and principal place of business at Hiwannee, Wayne County, Mississippi. In the years 1916 and 1917 it acquired by three deeds title to approximately 9,300 acres of land located in Clarke and Wayne Counties, Mississippi, of which the land in controversy was a part, it being located in Wayne County. It is claimed by appellees that title to the land, when it sold for taxes April 6, 1931, was in The Brown Lumber Company, a Mississippi corporation. That is a contention to be later considered. For purpose of discussing the legal effect of the tax sale we are assuming the land belonged to the Arkansas corporation.

On January 3, 1931, the Arkansas corporation was placed in involuntary receivership through the Chancery court of Pulaski County, Arkansas. E. N. Ahlfeldt was appointed receiver.

On February 11, 1931, a petition was filed in the bankrupt court at Little Rock, Arkansas, to have the Arkansas corporation declared a bankrupt. That was done by order of that court March 5, 1931. E. H. Ahlfeldt was appointed trustee in bankruptcy. This, of course, superseded the receivership. On April 18, 1932, the receiver was discharged. The receivership does not figure in this discussion. On March 23, 1931, the 9,300 acres of land had been inventoried and scheduled as an asset of the

bankrupt corporation. By sales under dates of April 6 and June 6, 1931, all of the lands of Brown Lumber Company, consisting, as stated, of some 9,300 acres, located in Clarke and Wayne Counties, Mississippi, including the land in controversy, sold for nonpayment of the taxes for the year 1930, and were struck off to the State of Mississippi.

On June 17, 1931, the Trustee in bankruptcy petitioned the Referee for authority to hire counsel and take proper judicial steps to have the tax sales to Mississippi declared null and void.

Thereafter negotiations were had between the Trustee and J. Roger Crowe, one of appellants, under which Crowe agreed to buy and the Trustee, with approval of the Referee, agreed to sell to Crowe all of the lands, "free and clear of all liens, including liens for taxes and assessments." This sale was later consummated, the deed to Crowe being dated April 11, 1932.

In the meantime it appears that negotiations were being had between the Trustee in bankruptcy and the county and state officials of Mississippi to adjust, settle and pay through the bankrupt court the taxes owing said counties and the State of Mississippi.

On March 7, 1932, the board of supervisors of Wayne County entered an order reciting that it had come to the knowledge of the board that the taxes for the years 1930 and 1931 had not been paid on the Brown Lumber Company lands in that County, and that this corporation had been adjudicated a bankrupt in the bankrupt court at Little Rock, and the order directed the tax collector of Wayne County to file "with the said referee in bankruptcy at Little Rock, Arkansas, at once a claim for all taxes due the county and state for the said years."

On December 1, 1932, the Referee in Bankruptcy entered an order reciting that the Trustee had presented a petition to that court, reciting that The Brown Lumber Company had been adjudicated a bankrupt effective Feb-

ruary 11, 1931, and that the bankrupt corporation owned large tracts of land in Clarke and Wayne Counties, Mississippi, which had been sold to the State for nonpayment of taxes for the year 1930; that the petition informed the bankrupt court sales were made without the knowledge or consent of the trustee, and that the trustee had agreed with the Attorney General of Mississippi and the Tax Commission and the counties upon the amount of tax to be paid by the bankrupt court, the counties to make proper division of the amount among themselves, and that any individuals who had purchased any of the lands should be refunded the amounts so paid by them and the order adjudged ''that all sales of said lands and forfeitures are to be removed against them as clouds upon the title thereto so that said title thereto shall be made in all respects clear and unclouded.'' The order directed the trustee in bankruptcy to carry out the provisions of this order.

On January 12, 1933, the Referee in Bankruptcy entered another order, reciting that the trustee had filed another petition setting out the sale of the lands on April 6 and June 6, 1931. The Referee adjudicated both sales void. It recited that Alf Stone, Chairman of the Mississippi Tax Commission; Moore, State Land Commissioner, the chancery clerk and tax collector and the board of supervisors of Wayne County had all entered their appearances in the bankrupt court, seeking adjustment and payment of the taxes, and that all proper and necessary parties were in court. The Referee then adjudicated that both sales — April 6 and June 6, 1931 — were null and void. It appears there were forty-one sales and all the land sold to the State except four pieces not here involved.

On March 27, 1933, the Attorney General of Mississippi wrote the attorney for the Trustee in Bankruptcy, saying the above mentioned order was entered in January

and he understood that the taxes due in March were to be paid right away.

On August 9, 1933, the supervisors of Wayne County entered an order refunding to C. H. Jones the amount he had paid on lands of The Brown Lumber Company, (not the lands in question) and reciting that the corporation at the time of the sales had been adjudicated a bankrupt and that the tax collector of Wayne County had no authority to sell the lands and that the United States District Court at Little Rock had adjudicated the tax sales void and that a copy of the order had been filed with the supervisors and the taxes had been paid through the bankrupt court. The order then directed that Jones be refunded the amount of taxes he had paid.

Apparently all of the taxes on all lands of the Brown Lumber Company, including the taxes owing for the years 1930 and 1931, were actually paid to the time of the filing of the bill herein in February 1951. Taxes on the lands here involved, and the other lands in Wayne County in this block, for the year 1930, were paid to and receipted by the sheriff and tax collector May 31, 1933.

A certified copy of the order of the Referee adjudging the tax sales void was filed in the office of the chancery clerk before expiration of the time for redeeming the lands from the tax sales, and all of the forty-one sales, except the two here involved, were marked void on the tax records. Failure to so mark the sales here involved appears to have been a simple oversight, which seemingly brought about this litigation. We are of the opinion that the state and county officials mentioned in the orders of the Referee had the authority and power to appear in the bankrupt proceedings and present the tax claims for adjudication and payment. The time for redeeming the lands from the tax sales had not expired when these proceedings took place. Indeed, all county and state officials who could possibly have had any power or authority in collecting the taxes and adjusting the tax

claims voluntarily appeared in the proceedings before the Referee. The Attorney General is expressly given power to "* * * pursue the collection of any claim or judgment in favor of the state outside of the state." Section 3841, Mississippi Code 1942.

The Arkansas bankrupt court had jurisdiction and power to adjust the claims and annul the sales. It is provided in 11 U. S. C. A. 104: "Section 64 (a). The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district or municipality, in the order of priority as set forth in paragraph (b) hereof * * *."

██ █ The trustee was in *custodia legis* of the lands in Mississippi. The taxes were owing upon those lands. The trustee in bankruptcy, under orders of the Referee, had the right and power to elect to pay or not pay the taxes; Meek v. Farmers Cooperative, 216 Miss. 140, 61 S 2d 778. And it mattered not that the bankruptcy was in Arkansas and the lands were located in Mississippi. The bankrupt court in Arkansas had jurisdiction and power to adjust and adjudicate claims against realty in his possession located in Texas. █ In Re Jackson, 9 Fed. Supp. 717. The bankrupt court has the power to order a sale of real property lying outside the district in which the court sits. In Re Canyon Pipe Line Co., 39 Fed. Supp. 233.

In the case of In Re Maryland Coal Co. of West Virginia, 36 Fed. Supp. 142, after announcing the rule that the jurisdiction of the bankrupt court was exclusive as to the bankrupt's property in the hands of the trustee, the Court further held that by filing a claim in the bankrupt court pertaining to tax liens upon the bankrupt's property, both real and personal, the sheriff had made his appearance in and submitted himself and the claims to the jurisdiction of the bankrupt court and the sheriff could not then sell the property to satisfy the tax liens. In this case, as in the case at bar, the trustee had agreed

to sell the property free of liens. The court said, "It would be futile for the court to sell property free of liens and encumbrances and transfer liens to the proceeds of sale if lienors could thereafter pursue the property in an effort to subject it to sale in satisfaction of a lien or liens. The purchaser of property has a right to look to the court to carry out its order and obligations to transfer the property free from interference by those lienors of whom the curt had jurisdiction and of whose liens the property was sold free."

In People of the State of Illinois v. Sullivan, et al., 175 Fed. 2d 283, the United States Court of Appeals, Seventh Circuit, held that a court of bankruptcy has power to dispose of all questions as to liens upon property in its custody, to allow or disallow claims, to determine the validity and amount thereof, to decide all controversies with regard to the bankruptcy estate, and is endowed with powers of a court of equity to dispose of all issues raised in the course of proceedings on claims. It further held that he who invokes the aid of the bankrupt court must abide the consequences, and that rule applies where the claimant is a state, which, by that procedure, waives any immunity which it might have as a sovereign.

In Gardner v. State of New Jersey, 91 L. Ed. 504, the Supreme Court of the United States held that one who invokes the aid of a bankrupt court in an effort to collect a claim must abide by the consequences of that procedure, and that by filing such a claim the state waives whatever immunity it might have respecting its adjudication of its claim in a Federal court.

In Isaac, Trustee, v. Hobbs Tie & Timber Co., 75 L. Ed. 645, the court held that jurisdiction of a bankrupt court over the assets of the bankrupt is exclusive; that upon adjudication title to the bankrupt's property vests in the trustee as of the date of filing of the petition in bankruptcy, and that while valid liens against the

property are preserved, "\* \* \* it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree the method of their liquidation."

This does not, of course, mean that the property is free and clear of just and legal claims, but it does mean that where the property is *in custodia legis* that any act interfering with the bankrupt court's possession, or with its power of control and disposal, and done without its sanction, is void. ■■ ■ Re Eppstein, 52 L. Ed. 919. On adjudication, title to all property of the bankrupt, as of the date of filing the petition, vests in the trustee in bankruptcy upon his appointment, ■■ ■ and the bankrupt court has plenary powers over the estate of the bankrupt and all adverse claims are to be presented to and decided by that court. Whitney v. Wenman, 49 L. Ed. 1159.

It should be kept in mind that this was not a proceeding in the bankrupt court to establish a judgment against the State of Mississippi. It was a proceeding to adjust and provide a method for payment of claims upon the bankrupt property, and which adjustment was carried out. The state collected all of its taxes upon the land in controversy, including the year it purported to sell for taxes. It should be remembered also, in appraising the actions of the state and county officials, that a depressing economic depression hovered over our state. The state needed money — not land.

■■ ■ We conclude that the Referee in granting the orders under consideration had jurisdiction of the subject matter and that all necessary parties were before him, and he had power to issue the orders.

■■ ■ But appellees contend that before these orders were issued the trustee had contracted to sell these lands to Crowe and that, for that reason, the bankrupt court had no jurisdiction to deal with the taxes. In the sale to Crowe the lands were to be "free and clear of all

liens, including liens for taxes and assessments.'' The trustee was under contractual obligation to remove the tax liens. That was the situation in In Re Maryland Coal Co. of West Virginia, supra, but the bankrupt court retained jurisdiction.

Appellees say the order of the Referee, dated January 12, 1933, is void because, at the heading of that order, appears number 3581, whereas the correct number of the bankruptcy proceeding is 3580. We cannot assent to that contention. The order is headed "IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DIVISION OF THE EASTERN DISTRICT OF ARKANSAS. IN THE MATTER OF THE BROWN LUMBER COMPANY, INCORPORATED, IN BANKRUPTCY, E. N. AHLFELDT, TRUSTEE.'' The order then recites that the trustee had filed the petition; that all of the Mississippi officials, as above stated, had appeared; that the sales of the lands as the property of this bankrupt had taken place, describing the lands, consisting of over nine thousand acres, and then expressly sets aside and annuls the tax sales. This is the only Brown Lumber Company, Incorporated, shown in this record to be in bankruptcy. Ahlfeldt is stated to be the trustee and he was trustee of the Brown Lumber Company. Description and ownership of the lands are shown to apply only to the bankruptcy here involved. It is clear that the number 3581 instead of 3580 was a clerical error. The identity of the bankruptcy is amply shown without the number.

The land in controversy, with a large part of the other lands of the bankrupt, sold for taxes on April 6, 1931. The remainder of the lands of the estate sold on June 6, 1931. The above order of the Referee, through error, stated that the lands in controversy sold on June 6th. Appellees contend that the order, so far as it affects the lands in this suit, was void for that reason. It is clear that listing the lands in suit as having

been sold June 6 was a mere oversight occurring in the effort to properly describe by metes and bounds and governmental subdivisions some nine thousand acres of land. The order does correctly describe the lands in question by governmental subdivisions. But the error in stating the day of sale as June 6 in nowise invalidates the order for the reason that the order sets aside the sales made April 6 and also those made June 6.

Lastly, appellees say the orders of the Referee are ineffective because the lands in controversy were owned by The Brown Lumber Company, a Mississippi corporation, and not by Brown Lumber Company, an Arkansas corporation, the bankrupt.

We have diligently searched this record and think it may be accurately stated that no person can say, with any degree of certainty, who technically had the legal title to the lands when this bankruptcy occurred. However, we think it matters not which corporation had that title. We think, under all the facts and circumstances of this case, the Mississippi corporation is estopped to assert title to the property, and that the quitclaim deeds executed by it November 18, 1940, were ineffectual to vest title in Mrs. Dawes and Sigler, the grantees in those deeds.

It will be necessary in order to pass intelligently upon the question of estoppel to further detail the facts and circumstances bearing upon that question.

The Brown Lumber Company was created as a corporation under the laws of Arkansas April 5, 1913. The incorporators were A. H. Banks and seven other parties. Apparently, Banks owned the controlling interest. The domicile was at Fordyce, Arkansas.

On April 21, 1913, that corporation was admitted to do business in Mississippi.

In 1916-17 the Arkansas corporation, by three deeds, acquired title to the aggregate of the lands in Clarke and Wayne Counties.

On May 29, 1918, the Arkansas corporation conveyed the lands to Treadwick. This deed was executed by A. B. Banks as president.

On July 22, 1918, charter was granted The Brown Lumber Company by the State of Mississippi, domiciled at Hiwannee, Mississippi. The incorporators were A. B. Banks, T. D. Wynne, W. H. Watkins and C. E. Treadwick.

On August 24, 1918, the Mississippi corporation was organized.

On September 6, 1918, Treadwick conveyed the land to the Mississippi corporation. The consideration was the issuance to Banks of 3989 shares of stock; to Holmes 8 shares and to Wynn, Watkins and Treadwick 1 share each. In other words, Banks owned all of the stock except 11 shares.

On March 20, 1920, the Mississippi corporation conveyed the lands to Heffner. The deed was executed by A. B. Banks as president. Heffner executed to the grantor in the deed a deed of trust.

On October 25, 1923, M. L. Heidelberg was appointed trustee in the Heffner trust deed instead of May, the original trustee. That appointment was by A. B. Banks, President.

On December 1, 1924, Heidelberg as trustee conveyed the lands to "Brown Lumber Co."

On February 25, 1925, Brown Lumber Company, Mississippi corporation, conveyed the lands to Carl Heim. This deed recites that The Brown Lumber Company is "now located at Fordyce, Dallas County, Arkansas." The deed was signed by A. B. Banks, President.

Heim executed a deed of trust to the Brown Lumber Company "a corporation with its domicile at Fordyce, Dallas County, Arkansas."

On August 2, 1926, Heidelberg, trustee, conveyed the property to "Brown Lumber Company."

On September 14, 1926, Brown Lumber company executed a deed to Wetherbee, grantor describing itself as a Mississippi corporation, "with its domicile now located at Fordyce, Dallas County, Arkansas." That deed was signed by A. B. Banks, as President.

On the same day Wetherbee executed a trust deed to "Brown Lumber Company, a corporation, with its domicile at Fordyce, Arkansas."

On January 16, 1930, Wetherbee was adjudged a bankrupt.

On March 12, 1930, the trustee in bankruptcy for Wetherbee executed a deed to "Brown Lumber Company, Incorporated, of Fordyce, Arkansas." The consideration for the deed was the cancellation of the trust deed Wetherbee had executed as above stated and payment to the trustee in bankruptcy of the sum of $250.00. It is not shown which corporation paid the $250.00.

On February 11, 1931, petition was filed to have The Brown Lumber Company, Arkansas Corporation, declared a bankrupt, which was done March 5. 1931. E. N. Ahlfeldt was appointed trustee.

The schedule of assets of the Arkansas bankrupt corporation listed the 9,300 acres of land, including the land in controversy, as property of the bankrupt. The Wetherbee notes were delivered to Ahlfeldt, trustee, and the schedule of assets recites "but they were cleared by the deed to the large tract of land." It then says the notes are being held by the trustee in bankruptcy for the Arkansas corporation "* * * as a vendor's lien against the land as a protection in the event the trustee's deed mentioned in real estate schedule should be attacked."

The land was duly valued by appraisers appointed in the bankruptcy proceedings.

Crowe made an offer to purchase the land and a meeting of creditors was duly called to consider the offer. That meeting was held, the report of the appraisers was duly considered, and the creditors agreed to accept

Crowe's offer. We have above referred to the conveyance by Ahlfeldt trustee to Crowe.

From the foregoing it will be seen that the names of the two corporations are identical except when the state of incorporation is given. Also, that Banks was president of both corporations and was the dominating influence in both of them. The chancellor so held and the proof amply justifies the finding. He executed all conveyances for both corporations. Both had their domicile at Fordyce, Arkansas — at least, it is stated as far back as 1926 that the domicile of the Mississippi corporation was also at Fordyce. The land in controversy, including the Wetherbee obligation, was scheduled by the Arkansas corporation as an asset of the corporation, and, we might add, the principal asset, the remainder of the estate being of the value of around two thousand dollars. The property was appraised in the bankrupt court; dealt with by the creditors of the bankrupt; sold and delivered by the trustee under authority of the creditors of the Arkansas corporation, and the proceeds distributed to the creditors of the bankrupt. The Mississippi corporation was domiciled in the same town —very likely in the same office. It had the same dominating and controlling power — A. B. Banks — yet, it made no objection or protest to the handling and sale of the property as an asset of the bankrupt as above set forth. Indeed, so far as we have discovered from this record, the Mississippi corporation did not attempt to exercise any control or perform any act of ownership over the lands from the time of the Wetherbee transaction in 1926 to the time it executed quit claim deeds to Sigler and Mrs. Dawes on March 28, 1952, over a year after the present bill was filed. During that time it paid no taxes on the land and made no claim thereto whatever so far as we discern from the record.

The essential elements of estoppel are conduct and acts, language or silence, amounting to a repre-

sentation of concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence. Izard, et al. v. Mikell, et al, 173 Miss. 770, 163 So. 498; Peeler v. Hutson, 202 Miss. 837, 32 So. 2d 785. In the Peeler case, supra, the father and two children each owned a 1/27 interest in land, and the purchaser, under the misapprehension that the father had no interest, purchased the children's share through the father, and the father did not correct the misapprehension, and thereafter rights of other parties intervened. This Court held the father was estopped to assert his right to a 1/27 interest in the land. And estoppel operates against corporations as against natural persons. 13 Am. Jur., Sec. 843, p. 840.

In 19 Am. Jur., Sec. 170, p. 823, it is said: "Estoppel operates both for and against corporations." It is inconceivable that the Mississippi corporation, under the same domination as the Arkansas corporation, with domicile at the same place, did not know this large tract of land, consisting of over nine thousand acres, had been scheduled as belonging to the Arkansas corporation in bankruptcy, and was being dealt with and handled as property of the bankrupt, inventoried, appraised and sold, and the proceeds paid out to the creditors of the bankrupt. That the Mississippi corporation was making no claim to ownership of the land is conclusively shown by the fact that from 1926 to 1952 — a period of twenty-six years — it never attempted to exercise any control over the land and paid no taxes thereon.

Reversed and judgment here for appellants.

*Hall, Kyle, Arrington* and *Ethridge, JJ.,* concur.