WALLER BROTHERS, INC., Plaintiff,

v.

EXXON CORPORATION, Defendant.

Civ. A. No. 2:92cv89PN.

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

July 12, 1993.

William L. Waller, Sr., Russel P. Grant, Jr., Jackson, for plaintiff.

E. Otis Johnson, Jr., Sam Thomas, Jackson, for defendant.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This matter is before the Court on motions by both the Plaintiff and the Defendant for summary judgment. The Court, having reviewed the briefs and the authorities cited, having heard oral arguments and being otherwise fully advised in this matter, finds as follows, to-wit;

### FACTUAL BACKGROUND

The Plaintiff, Waller Brothers, Inc. ("Waller Brothers"), is an oil and gas company that owns a leasehold interest in a 640–acre gas unit. The 640–acre gas unit was formed by Order ("July 20, 1989 Order") of the State Oil and Gas Board dated July 20, 1989. The effect of such order gave the Defendant Exxon Corporation ("Exxon") the right to force integrate the 640–acre gas unit and the right to charge "alternate charges" as well as drilling and completion costs to non-consenting owners who did not agree to participate in the well or agree to assign or lease their interest within a given time period. Before the unit was integrated, the Plaintiff and other non-consenting owners were extended the opportunity to either participate in the well as consenting owners or to convey their interests in the unit to the Defendant by assignment or lease or an agreement known in the industry as a "farm-out". No agreement was reached between the Plaintiff and the Defendant before July 20, 1989. Therefore, the Plaintiff and the other non-consenting owners were given notice of the proceeding that was to be held in front of the State Oil and Gas Board. The Plaintiff elected not to appear or to oppose the Defendant's proposed relief. The Plaintiff had a period of twenty (20) days after the July 20, 1989 Order was issued to enter an agreement with the Defendant or thirty (30) days to seek relief by appeal as provided by Mississippi law. An agreement was not reached within the twenty (20) days, nor was the Order appealed by the Plaintiff within thirty (30) days. However, negotiations between the Plaintiff and Dan Koontz, a representative from the Defendant's Houston office, to (1) sell, (2) farm out, or (3) pay its way continued before and after the July 20, 1989 Order.

During the on-going negotiations with the Plaintiff, the Defendant successfully tested a well from the unit; the test indicated the well would probably be productive. On August 23, 1990, the Plaintiff sent the Defendant a detailed cover letter and a check for $98,771.36 in payment of its share of drilling and completion costs. The letter was addressed to D.C. Jones, Supervisor, Financial Analysis of Exxon in New Orleans. After some delay, the check was deposited in the Defendant's bank account. However, within eight days after the Plaintiff's check was deposited, the Defendant discovered that the check was not

in furtherance of an agreement reached between the parties and attempted to refund the check to the Plaintiff. The Plaintiff refused to accept the refunded check and subsequently brought this suit against the Defendant. The Plaintiff claims that acceptance of its payment constituted an accord and satisfaction whereby the Defendant waived the right to charge and collect from the Plaintiff alternate charges. The Plaintiff also contends that the Defendant breached various statutory duties.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis* 799 F.2d 218, 222 (5th Cir.1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality' only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light more favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir.1984).

The moving party has the duty to demonstrate the lack of genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir.1982). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir.1978). In other words, the "nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436 (5th Cir.1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see also Union Planters Nat'l Leasing v. Woods*, 687 F.2d at 119.

## LEGAL ARGUMENTS

### A. Accord and Satisfaction

■ The Mississippi Supreme Court has recognized four basic elements of an accord and satisfaction. The elements are:

(1) something of value offered in full satisfaction of demand;

(2) accompanied by acts and declarations as amount to a condition that if the thing offered is accepted, it is accepted in satisfaction;

(3) the party offered the thing of value is bound to understand that if he takes it, he takes subject to such conditions; and

(4) the party actually does accept the item.

*Lovorn v. Iron Woods Products Corp.*, 362 So.2d 196, 197 (Miss.1978). The Fifth Circuit in *Woods–Tucker Leasing Corp. of Georgia v. Kellum*, 641 F.2d 210, 213–14 (5th Cir. 1981) defined an accord as "an agreement to give and accept something in full settlement of a claim." Satisfaction is defined as "the execution of the accord, which discharges the old claim." *Id.* at 214. The *Kellum* Court further stated "[i]n order to effect an accord and satisfaction, however, *the parties must intend that the payments constitute an accord and satisfaction.*" *Id.* (citing *Rivervalley Co. v. Deposit Guaranty Nat'l Bank*, 331 F.Supp. 698, 708–09 (N.D.Miss.1971)) (emphasis added). The essence of an accord and satisfaction is there must be a "meeting of the minds" and all essential elements of a contract must be met. *Cook v. Bowie*, 448 So.2d 286, 287 (Miss.1984). "The burden of proving an accord and satisfaction is upon the one who maintains the affirmative of that issue" and the proof *must be clear and convincing. Simmons v. Langston*, 128 So.2d 749, 750 (Miss.1961). If there is "an offer of part payment of a creditor's claim in full satisfaction of the whole" claim, the offer "must be clear and unequivocal in order to bind the creditor by the acceptance thereof." *Metropolitan Life Ins. Co. v. Perrin*, 192 So. 12, 14 (Miss.1939).

■ The Plaintiff contends that it is entitled to summary judgment as a matter of law in that the Defendant's acceptance of the Plaintiff's August 23, 1990 check for $98,-771.36 amounted to an accord and satisfaction. The Plaintiff argues that the purpose of its payment was clear since the check, which unambiguously spelled out what the payment was for, was accompanied by a detailed cover letter, which also explained what the check was for. The check along with the cover letter was sent to D.C. Jones, the Defendant's Supervisor, Financial Analysis. *See* Exhibits H and I to Plaintiff's Motion for Summary Judgment. To support its position that the Defendant knew or should have known what the payment was for the Plaintiff presented evidence showing that negotiations between the Plaintiff and the Defendant had been ongoing for over a year and six specific contacts had been made in the months of June, July and August of 1990,

just prior to the check being mailed. *See* Exhibits A–D, F, and G to Plaintiff's Motion for Summary Judgment. To further support its position the Plaintiff cited case law which stands for the proposition that the contract required in an accord and satisfaction may be implied from the circumstances surrounding each case. *See Rivervalley Co. v. Deposit Guaranty Nat'l Bank*, 331 F.Supp. 698 (N.D.Miss.1971); *Cook v. Bowie*, 448 So.2d 286 (Miss.1984); *Roberts v. Finger*, 86 So.2d 463 (Miss.1956); *see also Mid–Continent Tel. Corp. v. Home Tel. Co.*, 319 F.Supp. 1176, 1191 (N.D.Miss.1970) (intention to be bound by a contract is shown "where one party begins performance, with knowledge and approval of the other."). Therefore, based on the circumstances and the events surrounding the acceptance of the check in question, the Plaintiff argues that a contract was formed by implication. The terms of the implied contract are as follows: (1) that the Plaintiff became a "consenting owner", (2) that the Defendant disavowed the right to recover "alternate charges" and (3) that the Defendant and the Plaintiff would enter an Operating Agreement to govern their future relationship. *See* Exhibit C to Defendant's Motion for Summary Judgment at 7–11.

The Defendant contends that it is entitled to summary judgment as a matter of law in that the Plaintiff cannot show by clear and convincing evidence that there was a meeting of the minds between the parties. To support its position the Defendant presented the affidavits of Dan Koontz, Daniel C. Jones, Susanne Dismuke, Terri Fuller, Sandra Henry and Gretchen Moten to demonstrate that there was no meeting of the minds on any of the terms of the alleged accord and satisfaction claimed by the Plaintiff. *See* Exhibits D–I to Defendant's Motion for Summary Judgment. Furthermore, the Defendant presented the statement of Mr. Edward Waller, a representative of the Plaintiff who negotiated with Dan Koontz, the Defendant's representative, whereby Mr. Waller admitted that there was no agreement on the terms of the alleged accord and satisfaction. *See* Exhibit C, Deposition of Edward Waller to Defendant's Motion for Summary Judgment at 11–12 and 15. The Defendant contends that

the affidavits coupled with the admission by the Plaintiff show that there is no genuine issue of material fact regarding whether there was an accord and satisfaction, and thus it is entitled to summary judgment.

The Court finds that Defendant's actions of retaining the check in question for nearly three months and then depositing the check for eight days did not amount to an accord and satisfaction. The Court finds that there was no meeting of the minds and no contract was implied from the surrounding circumstances. The parties never discussed the possibility that if the Plaintiff sent the Defendant a check in the amount of $98,771.36 that this would resolve all matters in dispute. The August 23, 1990 check and cover letter did not provide clear and unequivocal notice that acceptance of such check would result in the Defendant being bound by the terms of the accord and satisfaction which the Plaintiff now claims. The check and the cover letter did not contain qualifying statements such as "Final Payment", "Payment in Full by Acceptance/Deposit", "In satisfaction of all claims" or the like. Even though the check was deposited the affidavits of the employees who handled the check demonstrate there was never an intent on behalf of the Defendant to enter into an agreement with the Plaintiff. See Exhibits D–I to Defendant's Motion for Summary Judgment. Mr. Waller dealt almost exclusively with Dan Koontz who worked in the Defendant's Houston office, yet Mr. Waller sent the check to someone in another state who was not involved in the negotiation process between the Plaintiff and the Defendant, i.e. the check was sent to D.C. Jones, a representative of the Defendant who worked in the Defendant's New Orleans office. Mr. Waller admitted he had never negotiated with Mr. Jones prior to sending him the check. See Exhibit C to Defendant's Motion for Summary Judgment at 34. The only correspondence the Plaintiff had received from Mr. Jones was a letter dated July 11, 1990, which was addressed to Mr. William Blair, attorney for the Plaintiff. Id.; Exhibit PR–2 to Plaintiff's Response to Defendant's Motion for Summary Judgment. The letter stated that the Plaintiff was a non-consenting owner and advised the Plaintiff of the total cost and how the Defendant would recoup its cost. This letter did not advise the Plaintiff that these costs were now due and owing, that the Plaintiff should pay this amount or that if Plaintiff did pay this amount, it would settle the matters in dispute between the parties. See Exhibit PR–2 to Plaintiff's Response to Defendant's Motion for Summary Judgment. A sworn, detailed, itemized statement setting forth the costs of drilling, etc. accompanied the letter. See Exhibit PR–1 to Plaintiff's Response to Defendant's Motion for Summary Judgment.

The Plaintiff also admitted that every time that it made an offer to the Defendant in an attempt to settle, the Defendant turned it down, i.e., Mr. Waller admits that neither side was ever close in reaching a settlement. See Exhibit C to Defendant's Motion for Summary Judgment at 21–22. The Plaintiff also admitted that prior to the tender of the check, the Defendant made no demand for payment of costs. Id. at 36. Furthermore, the Plaintiff admitted that before the check was tendered, it knew that the well was being tested and there was a good chance that the well would be successful. See Exhibit C to Defendant's Motion for Summary Judgment at 49. After the Plaintiff tendered its check to the Defendant on August 23, 1990, the Plaintiff did not have any contact with the Defendant until after the check cleared on November 13 or 14, 1990. Although the Plaintiff claims that it suffered a substantial loss of income during the three months the Defendant held the Plaintiff's check, the Plaintiff admitted that it did not forego any financial dealings because the check was outstanding. See Exhibit C to Defendant's Motion for Summary Judgment at 52–53.

Based on the evidence, the Court finds that there was not a meeting of the minds between the Defendant and the Plaintiff when the Defendant retained and deposited the Plaintiff's August 23, 1990 check. Thus, the Defendant is entitled to summary judgment as a matter of law in that there was no accord and satisfaction.

### B. Waiver

The Plaintiff contends that even if the Court finds that there was not an accord and

satisfaction, the Court should hold that the Defendant's acceptance of the Plaintiff's check resulted in a waiver by the Defendant to charge and collect from the Plaintiff alternate charges.

In *Gault v. Branton*, 75 So.2d 439, 445 (Miss.1954), the Mississippi Supreme Court defined waiver as the "intentional relinquishment of a known right." In explaining this doctrine the Fifth Circuit held that "a waiver must be supported by an agreement founded on a valuable consideration." *Chambers & Co. v. Equitable Life Assurance Soc'y of the United States*, 224 F.2d 338, 345 (5th Cir.1943). In order for waiver to exist, the party with the known right allegedly waived must intend to relinquish the right. *Watkins v. Fly*, 136 F.2d 578, 580 (5th Cir. 1943). Even though "waiver is usually a question of fact to be determined by the jury, or in a bench trial, by the court, when the facts are undisputed, . . . waiver is a question of law." *Highland Ins. Co. v. Allstate Ins. Co.*, 688 F.2d 398, 404 (5th Cir.1982).

The Court finds that in the case at hand the facts surrounding the alleged waiver of the alternate charges are undisputed. The Defendant's acceptance of the Plaintiff's check did not result in an intentional waiver of the Defendant's right to charge and collect from the Plaintiff alternate charges. The Plaintiff admitted that the Defendant did not agree to waive the alternate charges. *See* Exhibit C to Defendant's Motion for Summary Judgment at 11–13, 15. Furthermore, the Plaintiff failed to present any evidence to support its allegations that the Defendant intended to waive the Plaintiff's alternate charges. To the contrary, the Defendant presented evidence that the Defendant had no intentions of waiving alternate charges when the Defendant deposited the Plaintiff's check. *See* Exhibits D–I to Defendant's Motion for Summary Judgment. Therefore, the Court holds that the Defendant is entitled to judgment as a matter of law on the Plaintiff's waiver claim.

## C. Estoppel

The Plaintiff contends it is entitled to summary judgment as a matter of law in that the deposit of the check by the Defendant gave rise to an estoppel prohibiting the Defendant from recovering alternate charges.

The Defendant contends that it is entitled to summary judgment as a matter of law in that the doctrine of estoppel is not applicable.

In *Crowe v. Fotiades*, 224 Miss. 422, 80 So.2d 478 (1955) the Mississippi Supreme Court set out the essential elements of estoppel.

> The essential elements of estoppel are conduct and acts, language or silence, amounting to a representation or concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence.

*Id.* 80 So.2d at 486. The party claiming estoppel "has the burden to establish the facts necessary to constitute it." *Brown v. Pittman*, 211 Miss. 344, 51 So.2d 732, 734 (1951). The doctrine of estoppel was established "to protect a party from a loss which, but for the estoppel, he could not escape, and was never intended to work a positive gain to the party invoking the same." *State v. Butler*, 197 Miss. 218, 21 So.2d 650, 653 (1945).

The Court finds that the Defendant's conduct did not amount to an estoppel, which prohibits the Defendant from recovering alternate charges. The Plaintiff admitted that the Defendant never said anything to the Plaintiff that would lead the Plaintiff to believe it could make a payment to the Defendant and become a consenting owner. *See* Exhibit C to Defendant's Motion for Summary Judgment at 15. Furthermore, the Plaintiff failed to present any evidence to demonstrate that it detrimentally relied on the Defendant's conduct, nor any evidence to show that it lost any business deals while the check was outstanding. To the contrary, the Defendant presented an admission by the Plaintiff that it lost no business deals while the check was outstanding. *See* Exhibit C to Defendant's Motion for Summary Judgment at 53. In order for equitable estoppel to apply, the party allegedly liable has to take some action which basically misleads a party and the misled party must rely on such ac-

tion to its detriment. Here, the action was actually taken by the Plaintiff when the Plaintiff forwarded the check to the Defendant. The only thing that the Defendant did was to hold the check for approximately ninety (90) days and then deposit the check and keep the money for eight days. The Court is of the opinion that the Defendant's reaction to the Plaintiff's sending a check to the Defendant, which had not been solicited by the Defendant and which had not been discussed in any negotiations between the parties, was not sufficient to work an equitable estoppel. Therefore, since the Plaintiff has failed to provide sufficient evidence to establish a genuine issue of material fact as to whether estoppel applies, the Court finds that the Defendant is entitled to summary judgment as a matter of law as to this issue.

## D. Exhaustion of Administrative Remedies

■ The Defendant contends that it is entitled to summary judgment as a matter of law in that the Plaintiff's failure to exhaust available statutory remedies estops the Plaintiff from seeking relief in this Court. The Defendant argues that Miss.Code Ann. § 53-1-43, a procedural statute that must be followed before the Plaintiff can bring suit in this Court, applies to the case at hand. The Defendant contends that the Plaintiff's claims are prohibited by the "collateral attack" doctrine. *See Frost v. Gulf Oil Corp.,* 238 Miss. 775, 119 So.2d 759, 764-65 (1960).

The Plaintiff acknowledges that it is not trying to attack the validity of the Order of the Mississippi Oil and Gas Board other than to challenge its constitutionality. Plaintiff seeks relief from facts occurring after the July 20, 1989 Order. Consequently, the question of exhaustion of administrative remedies is not applicable.

## E. Compliance with the "Forced Integration" Statute

■ The Plaintiff alleges throughout its Complaint that the Defendant did not comply with Miss.Code Ann. § 53-3-7, and thus as a result of such noncompliance the Defendant breached its duties of good faith and fiduciary relationship. *See* Counts II, III, and V of the Plaintiff's Complaint.

The Defendant denies that it breached Miss.Code Ann. § 53-3-7 and further denies that the statute creates a fiduciary relationship between the Plaintiff and the Defendant.

■ In order to survive a summary judgment motion on this issue the Plaintiff cannot sit back and rely on the bare allegations of its Complaint; the Plaintiff must come forth and present some evidence which would show there is a genuine issue of material fact as to whether the Defendant failed to comply with Miss.Code Ann. § 53-3-7. *See In re Municipal Bond Reporting Antitrust Litig., supra.* The Plaintiff failed to present any evidence either factual or legal to support its allegations; therefore, summary judgment is appropriate. In any event, the time the Plaintiff should have brought up this argument was before the Oil and Gas Board. However, the Plaintiff failed to appear before the Oil and Gas Board at the time of the hearing and the Plaintiff did not take any action within twenty (20) days after the Oil and Gas Board's decision, nor did the Plaintiff appeal the Oil and Gas Board's decision. Although the Plaintiff denies that it is collaterally attacking the Order of the Oil and Gas Board, the Plaintiff is in essence using a backdoor approach in an attempt to indirectly collaterally attack the Order by arguing to this Court that equities were not done. This argument should have been made before the Oil and Gas Board and is here precluded. This Court likes to see equity done in all situations, but it simply cannot re-litigate matters that were or should have been litigated before other tribunals and cannot resolve issues that are not even before this Court.

## F. Mississippi "Forced Integration" Statute is Constitutional

■ Count IV of the Plaintiff's Complaint alleges that Miss.Code Ann. § 53-3-7(2) is unconstitutional. More specifically, the Plaintiff contends that the penalty part of the statute is unconstitutional since it "violates the rights of individual owners of interest in real property to contract and to have the benefit of due process in the event the terms

of a contract cannot be agreed upon." *See* Count IV of the Plaintiff's Complaint.

After carefully reading Count IV of the Plaintiff's Complaint, the Court finds that the Plaintiff has failed to present any factual or legal basis as to why the statute is unconstitutional other than the vague allegations contained in the Complaint. The Plaintiff has failed to state whether the Defendant is violating its rights as guaranteed by the United States Constitution or its rights under the Mississippi Constitution. The Court finds that the Defendants are entitled to summary judgment as a matter of law on this issue.

■■■■ If the Court were to decide whether Miss.Code Ann. § 53–3–7(2) is constitutional or unconstitutional, there is a general presumption that all statutes are constitutional. *See Vance v. Lincoln County DPW,* 582 So.2d 414, 419 (Miss.1991). In addressing the issue of whether states can pass laws regulating the oil and gas industry, the United States Supreme Court has held that "a state has constitutional power to regulate production of oil and gas so as to prevent waste and to secure equitable apportionment among landholders of the migratory gas and oil underlying their land, fairly distributing among them the costs of production and of the apportionment." *Hunter Co. v. McHugh,* 320 U.S. 222, 227, 64 S.Ct. 19, 21, 88 L.Ed. 5 (1943). Although the Fifth Circuit and the Mississippi Supreme Court have not addressed whether the penalty part of the Mississippi "forced integration" statute is constitutional, the Mississippi Supreme Court has upheld the constitutionality of the forced integration features of the Conservation Law against challenges under the due process and impairment of contract clauses of the Constitutions of Mississippi and the United States. *See Superior Oil Co. v. Foote,* 214 Miss. 857, 59 So.2d 85, 92 (1952).

The Utah Supreme Court has upheld the validity of a penalty statute similar to Mississippi's penalty statute. *See Bennion v. ANR Production Co.,* 819 P.2d 343 (Utah 1991). In *Bennion,* the Utah Supreme Court recognized that "[a] nonconsent penalty is 'designed to ensure that nonparticipating owners do not benefit from the successful outcome of risks they do not take.'" *Id.* at 348

(quoting *In re SAM Oil,* 817 P.2d 299, 302 (Utah 1991)). The court held that when a nonconsent party is paid a royalty from production and given the opportunity to participate in the drilling of the well, "the subsequent imposition of a nonconsent penalty constitutes a valid exercise of the police power.... The penalty is not an unconstitutional taking of property." *Id.*

Based on *Vance, supra,* this Court presumes that Miss.Code Ann. § 53–3–7 is constitutional. The Plaintiff has failed to present any evidence to the contrary. The Court finds that the same reasoning, applied in the *Hunter, Superior* and *Bennion* cases *supra,* applies to the case at hand. The "state may enact regulatory laws for and prescribe methods of extracting oil and gas for the purposes of conservation...." *Superior,* 59 So.2d at 93. Miss.Code Ann. § 53–3–7, which allows alternate charges, is a way to regulate the oil and gas industry. Thus, the Defendant is entitled to summary judgment as a matter of law in regard to the claim that Miss.Code Ann. § 53–3–7 is unconstitutional. Count IV of the Plaintiff's Complaint is hereby dismissed.

### G. Miscellaneous Claims

■■ The Plaintiff contends that the well charges and the alternate charges are excessive and the alternate charges should be forfeited. The Court finds this issue is not properly before this Court. On January 25, 1991, the Plaintiff filed a petition with the State Oil and Gas Board pursuant to Miss. Code Ann. § 53–3–7 to determine the reasonableness of the well costs. That proceeding resulted in a Settlement Agreement establishing the costs of the well upon which alternate charges would be based. The Court finds that the Plaintiff cannot re-litigate the reasonableness of the well costs and alternate charges in this Court. The Settlement Agreement is binding. Therefore, the Defendant is entitled to summary judgment on this issue.

■■ The Plaintiff alleges in Count V of its Complaint that the Defendant committed an "independent tort" when the Defendant refused to treat the Plaintiff as a "consenting owner". This is an allegation of bad faith

based upon breach of contract. The Court previously found that the Plaintiff failed to present any evidence that there was a genuine issue of material fact as to whether the Defendant breached its duty of good faith. Based on this previous finding and the fact that the Plaintiff failed to present any evidence to support its allegations of bad faith based upon breach of contract, the Court finds that the Defendant is entitled to summary judgment as a matter of law as to this issue.

The Plaintiff also alleges that the Defendant refused to pay royalties to the Plaintiff's lessors. The Defendant's submitted the undisputed affidavit of Juanita Page that Exxon complied with the statutory requirement of Miss.Code Ann. § 53-3-7(2)(h), (i) and paid the Plaintiff's lessors up to three-sixteenth (³⁄₁₆) of the proceeds attributable to the Plaintiff's interest when there was no reasonable question as to good and merchantable title to the royalty interest. Based on this undisputed affidavit, the Court finds that the Defendant is entitled to summary judgment as a matter of law on this issue.

Count V of the Plaintiff's Complaint contains allegations that the Plaintiff is entitled to punitive damages as a result of the Defendant's actions described in the Complaint. The Court finds that since the Plaintiff has no claim for actual damages, the Plaintiff has no claim for punitive damages. The Defendant is entitled to summary judgment on this issue.

The Court, after carefully reviewing the Plaintiff's Complaint, finds that there are no other theories which the Court has not ruled on and which would create a genuine issue of material fact; consequently, the case is dismissed with prejudice.

■■■■ As to the $98,771.36 check which is still being held by the Defendant, the Court finds that the check plus interest drawn on it should be returned to the Plaintiff. The statutory penalty is clear, it can be invoked only if the well is productive. Generally the non-consenting owner who is as-

sessed this penalty has chosen not to obligate itself prior to the incurring of expenses and has chosen to pay the money over a period of time. In this situation, it would be inequitable to allow the Defendant who has been paid the money, although paid late, to claim the penalty and keep the tendered check. Consequently, it is equitable that the amount of money paid by the Plaintiff should be forthwith returned to the Plaintiff. The Court does not find a specific interest rate mandated under the facts of this case. Under general equitable considerations after considering the federal interest rate, the state interest rate, the interest rate on passbooks and checking accounts as well as T-Bills, the Court finds that a six (6%) percent interest rate is equitable and should be paid to Plaintiff by Defendant on the sum represented by the check mailed by Plaintiff to Defendant.[1]

A judgment will be entered accordingly.

SO ORDERED AND ADJUDGED.

### *JUDGMENT*

This day this cause came on for hearing before the Court on Motions by both the Plaintiff and the Defendant for summary judgment, the issues having been duly heard and a decision having been duly rendered:

It is Ordered and Adjudged:

That the sum of $98,771.36 shall be paid by the Defendant to the Plaintiff together with interest at the rate of six (6%) beginning the date the check was deposited, i.e., November 14, 1990, until the date this amount is paid in full.

That the Defendant's Motion for Summary Judgment is GRANTED and the Plaintiff's Motion for Summary Judgment is DENIED. Having resolved all issues, this matter is hereby dismissed with prejudice. All motions pending in this matter, if any, are hereby moot and are accordingly dismissed.

SO ORDERED AND ADJUDGED.

---

1. The Court notes that six (6%) percent interest rate is more than the federal rate of interest and it is less than the state legal rate of interest and it is more than interest drawn on passbooks or checking accounts and it is less than the rate on T-Bills. The parties almost agreed to an "in between rate" when the parties presented oral argument.