SUGG, Justice, for the Court:
The Circuit Court of Jasper County reversed an order of the State Oil and Gas Board that supplemented and amended the Special Field Rules for the Lake Como Field. Texas Pacific Oil Company, Inc. and the Oil and Gas Board have appealed seeking reinstatement of the order as promulgated. The questions on this appeal are, (1) does surface acreage content remain the basis of allocating the allowable production of oil and gas between a unitized drilling unit and a non-unitized individual drilling unit which produce from the same oil pool, (2) if so, does allocation based on surface acreage content deny the individual drilling unit the equal protection of the laws, and (3) is there substantial evidence to support'Special Field Rule 4(D) which allows a well in the unitized drilling unit to produce twice the daily allowable assigned to an off-setting well in the adjacent drilling unit ?
Five oil wells produce from the Smack-over Oil Pool in the Lake Como Field in Jasper County. The Smackover Pool is a small pool which runs northwest from a point where two fault lines intersect, gradually widening as it runs to the northwest. Texas Pacific Oil Company, Inc. proposes to institute secondary recovery operations to recover an additional 2,500,000 barrels of oil from the pool. Secondary recovery will be accomplished by injecting salt water in a producing well located near the northwest corner of the pool to increase pressure in the pool and cause the oil to flow toward the southeast. Texas Pacific contends that production of oil will be increased in all wells, particularly in the Scott and Massey wells in the southeast part of the pool. The Massey well is located at the southeastern end of the pool.
Upon petition of Texas Pacific, the State Oil and Gas Board approved a plan of unit operation, or unitization, that unitized four of these wells into the “Smackover Unit” comprising 1,034 surface acres. Unitization was pursuant to the Fieldwide Unitization Act of 1964, amended in 1972 and presently codified as Mississippi Code Annotated sections 53-3-101 to -119, as amended, (Supp.1975). The purpose of unitization is to permit effective secondary recovery operations from the Smackover Oil Pool. The fifth well, called the Massey Unit, elected not to participate in unitization and was therefore known as an “individual drilling unit.” This unit contained 160 surface acres. In addition to approval of the plan of unitization, the Board reduced the daily allowable of production of the Smackover Oil Pool from 2500 barrels of oil per day to 2,000 barrels per day.
Upon a second petition of Texas Pacific, the Oil and Gas Board supplemented and amended the Special Field Rules for the Lake Como Field to coordinate them with the secondary recovery program for the Smackover Oil Pool. Rule 4(B) established surface acreage content as the basis of allocating the daily allowable of production between the Smackover Unit and the Massey Unit.
The daily allowable of such pool shall be allocated as follows: To each individ *662 ual drilling unit there shall be allocated that proportionate part of the pool’s daily allowable that the surface acreage content of such individual drilling unit bears to the total surface acreage contained within all such individual drilling units plus the acreage contained within the Smackover Unit. The remainder of the daily allowable for such pool shall be be allocated to the Smackover Unit.
When applied to the daily allowable of production, this formula allocated 1732 barrels per day to the Smackover Unit and 268 barrels per day to the Massey Unit. Prior to unitization and reduction of the daily allowable of production, the four Smack-over Unit wells produced 1800 barrels per day and the Massey Unit well produced 400 barrels per day. Rule 4(D) of the Special Field Rules provided that the allowable production of any unit draining the Smackover Oil Pool could be produced by any well or wells on the unit and mandated that “Smackover Unit wells directly or diagonally offsetting individual drilling units shall not be allowed to produce more than twice the daily allowable assigned to nondeficient individual drilling units.” In practice this rule permits the Scott Well of the Smackover Unit to produce twice the daily allowable assigned to the Massey Unit, or 536 barrels per day.
Petro Grande, Inc. and Robinson Resource Development Company, Inc., majority owners of the Massey Unit, appealed to the Circuit Court of Jasper County protesting Rules 4(B) and (D). The court reversed the Board’s order, holding that the Fieldwide Unitization Act does not contain any mechanical formula by which production is to be allocated but requires only that allocation shall be “fair and equitable.” In concluding that there was no evidence that surface acreage allocation was fair and equitable in this case, the court emphasized the fact that the Board’s order required surface acreage allocation between the Smackover Unit and the Massey Unit but that “factors other than a mere mechanical acreage allocation went into the assigning of production among the once individual units that were incorporated into the fieldwide unit.” The court held that this different treatment was “grossly unfair” and denied the Massey Unit owners the equal protection of the laws. Finally, the court struck down Rule 4(D) as “unfair on its face” and unsupported by evidence.
I.
Prior to 1964 it was settled in this state that surface acreage content was the basis of allocating the daily allowable production of oil and gas between a unitized drilling unit and an individual drilling unit sharing a common source of oil and gas. Barnwell, Inc. v. Sun Oil Co., 249 Miss. 398, 162 So. 2d 635 (1964) ; Corley v. Mississippi State Oil and Gas Board, 234 Miss. 199, 105 So. 2d 633 (1958); Humble Oil and Refining Company v. Welborn, 216 Miss. 180, 62 So. 2d 211 (1953); Mississippi Code Annotated section 6132-21 (d) (1956 Recomp.) [now Mississippi Code Annotated section 53-3-5 (d) (1972)]. The 1964 Fieldwide Unitization Act, as amended in 1972, permits the unit operation, or unitization, of an entire oil or gas field, pool, pools, or portions or combinations thereof, upon the finding and fulfillment of certain enumerated facts and conditions by the Oil and Gas Board. See Mississippi Code Annotated sections 53 — 3— 103, -105, -107, as amended, (Supp.1975).
The lower court made two critical errors in its review of this Act. First, the Act prescribes “contributing value to the unit” as the basis, of allocating production among the members of the unitized drilling unit. Mississippi Code Annotated section 53-3-105(c), as amended, (Supp.1975). Second, the Act does not change or alter the law establishing surface acreage content as the basis of allocating production between a unitized drilling unit and an individual drilling unit; surface acreage allocation survived the 1964 Act and its sub *663 sequent amendments and remains the basis of allocating production between a unitized drilling unit and an individual drilling unit. Rule 4(B) of the Special Field Rules correctly requires surface acreage content as the basis of allocating the daily allowable of production between the Smackover Unit and the Massey Unit.
II.
Allocation based on surface acreage content does not deny the Massey Unit owners the equal protection of the laws. We upheld this very formula in Barnwell, Inc. v. Sun Oil Company, supra, as an exercise of the state’s police power over industry. Moreover, it is clear that there are legitimate state interests in maintaining the two formulas of allocation: The encouragement of participation by all drilling units sharing a common source of oil and gas in secondary recovery operations, and the prevention of a non-participating unit from enjoying the benefits of secondary recovery without sharing in the costs. The classification is related to legitimate state interests and the means chosen to effectuate those interests are reasonable. Sharpe v. Standard Oil Co., 322 So.2d 457, 460-61 (Miss.1975).
III.
The lower court erred in striking down Rule 4(D). The rule is one of limitation in two senses of the word: It prevents the Smackover Unit from producing all of its daily allowable from one well adjoining the Massey Unit and attempts to reduce to a minimum the benefits that the Massey Unit will enjoy from the forced oil flow toward the Massey Unit created by the secondary recovery operation. The rule does not alter the Smackover Unit’s overall allowable but merely permits the Smack-over Unit to shift part of its total allowable to the Scott Well to offset any undue benefits accruing to the Massey Unit from the secondary recovery project in which it is a non-participant. There was conflicting evidence on this question, but Texas Pacific presented substantial evidence to support the Board’s promulgation of Rule 4(D).
We note that there is currently pending before this Court an appeal contesting the formation of the Smackover Unit. We express no opinion as to whether or not the Board acted properly in approving the plan of unit operation but limit this decision to the issues discussed. The judgment of the circuit court is reversed and the order of the Oil and Gas Board reinstated.
REVERSED AND ORDER OF BOARD REINSTATED.
GILLESPIE, C. J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, WALKER, BROOM and LEE, JJ., concur.