811 So.2d 335 (2001)
William R. VICE and Gladys C. Vice, Appellants
v.
Harold O. HINTON and Bonnie F. Hinton, Appellees.
No. 1999-CA-01593-COA.
Court of Appeals of Mississippi.
January 16, 2001.
*336 Williams S. Murphy, attorney for appellants.
John D. Smallwood, attorney for appellees.
Before SOUTHWICK, P.J., LEE, and THOMAS, JJ.
LEE, J., for the Court:
¶ 1. William and Gladys Vice had an order of eviction entered against them in the Circuit Court of Perry County. The Vices filed a timely appeal and assert the following issue: whether the Statute of Frauds was complied with when counsel for the land owners (i.e., Harold and Bonnie Hinton) furnished a letter for the sale and purchase of their property. On cross-appeal, the Hintons's assert the following issue: whether the Hintons are entitled to double rent, as well as an award of damages pursuant to Mississippi Rules of Appellate Procedure Rule 38 for a frivolous appeal. This Court determines that the issue presented by the Vices is without merit; therefore, we affirm the order of eviction. We also hold that the issue presented by the Hintons regarding damages pursuant to Mississippi Rules of Appellate Procedure Rule 38 is without merit. However, we conclude, as discussed below, that the issue regarding double rent must be remanded for an additional hearing by the trial court.

FACTS AND RELEVANT PROCEDURE
¶ 2. Gladys Vice testified that on December 11, 1987, she and her husband, William, moved into a house located on twenty acres of property owned by the Hintons. Gladys stated that when they moved into the house she, her husband, and the Hintons entered into an oral agreement for the purchase of the house and land.
¶ 3. The terms of the original oral agreement required that she and her husband *337 pay the total sum of $95,000 plus interest for the house and the land. More specifically, the Vices were to pay $5,000 as a down payment and $600 a month for payments toward the purchase price. The Vices claimed that this transaction was to be owner financed. Mrs. Vice contended that subsequently the terms of the agreement were modified.
¶ 4. Mrs. Vice stated that instead of paying the $5,000 down payment, her husband did bulldozer work for Mr. Hinton. Additionally, Mrs. Vice asserted that she and her husband had financial trouble; therefore, she spoke with Mrs. Hinton and arranged for the monthly payments to be reduced to $460 a month. Mrs. Vice conceded that they had missed some of the house notes, but that since the first eviction notice they had been current on all payments.
¶ 5. On a letter that appears to bear the date of April 10, 1995, counsel for the Hintons informed the Vices that their lease had been terminated and that they had thirty days from receipt of the notice to vacate the property. The following reasons were enumerated for the termination: removal of a fence, as well as the removal of sand, clay, and topsoil from the property without paying royalties to Mr. Hinton, and irregular rent payments.
¶ 6. Nevertheless, on September 21, 1995, counsel for the Hintons mailed a letter to the Vices. The letter stated that counsel had been informed by the Hintons that in 1987 they and the Vices had discussed the purchase of the house and acreage for $95,000, with $5,000 as a down payment, and $600 per month until the purchase price was paid. This transaction was going to be owner financed. Nonetheless, no written instrument was executed that incorporated the above terms. Counsel went on to explain that he had also been informed that the down payment was never made and that the Vices only made two payments of $600 whereupon the Vices unilaterally reduced the payments to $460 a month. Additionally, counsel asserted that the Hintons had reported that since 1988 approximately twenty-six payments had been missed by the Vices. Notwithstanding, the Hintons agreed to sell the twenty acres of property where the house is located for the sum of $95,000, and the Hintons declined to owner finance the purchase. The Vices would have to finance the transaction through a lending institution or elsewhere. Thereafter, counsel requested that he be informed if the Vices accepted the proposal. The record does not reveal that the Vices ever accepted and satisfied the terms of the offer to sale. Thereafter, counsel for the Hintons mailed several letters re-notifying the Vices of their eviction.
¶ 7. According to the supplemental order of eviction entered by the Circuit Court of Perry County, on June 25, 1997, the justice court judge entered an order of eviction. The Vices appealed this order to the circuit court. The circuit court affirmed the ruling of the justice court and entered an order to evict the Vices.

STANDARD OF REVIEW
¶ 8. "A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor," his or her findings will not be reversed on appeal where they are supported by substantial, credible, and reasonable evidence. Par Indus., Inc. v. Target Container Co., 708 So.2d 44, 47 (¶ 4) (Miss.1998) (quoting Puckett v. Stuckey, 633 So.2d 978, 982 (Miss.1993)) (citing Sweet Home Water & Sewer Ass'n v. Lexington Estates, Ltd., 613 So.2d 864, 864, 872 (Miss.1993); Allied Steel Corp. v. Cooper, 607 So.2d 113, 119 (Miss.1992)). Therefore, "on appeal, this Court will respect *338 the factual findings of a circuit judge trying a cause without a jury when the findings are supported by reasonable evidence in the record and are not manifestly wrong." Bray v. City of Meridian, 723 So.2d 1200, 1203 (¶ 16) (Miss.Ct.App.1998). An appellate court is required to examine the entire record and must accept, "that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact." Cotton v. McConnell, 435 So.2d 683, 685 (Miss.1983) (quoting Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983)).

DISCUSSION
¶ 9. The following issue was asserted by the Vices.

I. WHETHER THE STATUTE OF FRAUDS WAS COMPLIED WITH WHEN COUNSEL FOR THE LAND OWNERS FURNISHED A LETTER FOR THE SALE OF THEIR PROPERTY.
¶ 10. The Vices contend that the trial judge erred when he held that there was no writing to comply with the Statute of Frauds; therefore, he had to evict the Vices. The Vices assert that the letter from the Hintons' counsel complied with the requirements of the Statute of Frauds and was an enforceable agreement; therefore, they were wrongfully evicted from the house and the twenty acres on which it was located. The Hintons argue that the letter from their counsel does not constitute a binding contract, but instead was only a "proposal."
¶ 11. The Vices assert that numerous cases state that "a party is bound by the actions and statements of their attorney who is acting within the course and scope of employment." As contended by the Vices, a party may be bound by the acts of their attorney. See Fairchild v. General Motors Acceptance Corp., 254 Miss. 261, 265, 179 So.2d 185, 187 (Miss.1965). A reading of the letter dated September 21, 1995, reveals that counsel had been authorized by the Hintons to make an offer to the Vices for the sale of the property. Indeed, the Hintons do not protest that counsel was speaking on their behalf when he made the offer to sale. To the contrary, the Hintons assert that although an offer was made, a binding, written contract was never entered into between the Hintons and the Vices.
¶ 12. It is basic contract law, that a contract is not formed until the offeree accepts the terms stated by the offeror. Edwards v. Wurster Oil Co., Inc., 688 So.2d 772, 775 (Miss.1997).
¶ 13. Testimony given by the Vices at trial showed that they did not perform the requirements as stated by the Hintons in the letter containing their offer to sale; therefore, a binding contract was not formed. In the Hintons' offer to sell, they stated that they would not finance the sale and required the Vices to obtain financing elsewhere. Neither Mrs. Vice nor her husband testified that they had obtained financing for the purchase of the property.
¶ 14. We also note that no formal notice of revocation is necessary if before the party accepts the offer, they have knowledge of an act by the offeror that would be inconsistent with the offer of the sale of the land and constitutes a revocation. Bancroft v. Martin, 144 Miss. 384, 109 So. 859, 860 (1926). Prior to the Vices meeting the terms of the offer, the Hintons effectively revoked the same when they subsequently mailed letters stating that the Vices' tenancy had been terminated and they were to vacate the property.
*339 ¶ 15. We conclude that the Vices failed to timely accept the offer of the Hintons; therefore, there was no binding, written contract. Since this Court determines that there was never a meeting of the minds which created a binding contract for the sale of the land and the house, there is no need to further discuss the issue relative to the Statute of Frauds. There was substantial and reasonable evidence in the record to support the order of eviction entered by the circuit judge. Accordingly, this issue is without merit.
¶ 16. On cross-appeal the Hintons assert the following issue:

II. WHETHER THE HINTONS ARE ENTITLED TO DOUBLE RENT, AS WELL AS DAMAGES PURSUANT TO MISSISSIPPI RULES OF APPELLATE PROCEDURE RULE 38 FOR A FRIVOLOUS APPEAL.
¶ 17. The Hintons assert that the Vices' argument regarding the Statute of Frauds is not properly before this Court because the Vices never filed an action against the Hintons for the enforcement of a contract for the sale of the land and house. Instead, the initial action was based on the Hintons' complaint to evict; therefore, the Hintons urge this Court to hold that the Vices' appeal is frivolous and without merit and award damages and attorney fees pursuant to Mississippi Rules of Appellate Procedure Rule 38. Additionally, the Hintons request that pursuant to statutory law they be awarded double rent. We will first address the issue of whether the appeal filed by the Vices was frivolous.
¶ 18. In the Vices' answer to the Hintons' complaint to evict, they initially asserted that they had an agreement to purchase the property in question and protested that they were subject to eviction. Additionally, the Vices' presented testimony in the circuit court regarding the letter from the Hintons' counsel in an attempt to support the aforementioned argument. On this basis, we decline to call the appeal "frivolous" and award damages and attorney fees pursuant to Mississippi Rules of Appellate Procedure Rule 38.
¶ 19. As aforementioned, the Hintons have also requested this Court to award double rent to compensate them for the years of loss of use of enjoyment of their property. At the lower court level, the Hintons' request for double rent pursuant to Miss.Code Ann. § 89-7-25 (1972) was held in abeyance by the trial judge.
¶ 20. Miss.Code Ann. § 89-7-25 (1972) reads as follows:
When a tenant, being lawfully notified by his landlord, shall fail or refuse to quit the demised premises and deliver up the same as required by the notice, or when a tenant shall give notice of his intention to quit the premises at the time specified, and shall not deliver up the premises at the time appointed, he shall, in either case, thenceforward pay to the landlord double the rent which he should otherwise have paid, to be levied, sued for, and recovered as the single rent before the giving of notice could be; and double rent shall continue to be paid during all the time the tenant shall so continue in possession. (emphasis added).
¶ 21. In Weatherall v. Brown, 113 Miss. 887, 74 So. 765, (1917), the Mississippi Supreme Court stated that when a tenant holds over, regardless of one's good or bad faith, once notice to quit is given the right to double rent is absolute. Since mandatory language is used in the statute and case law, we remand this case to the trial court so that it may fully address the issue of the Hintons' entitlement to double rent. We note that while the right to double rent is absolute, there are threshold requirements that must be complied with before an individual may be granted the payments. *340 Therefore, before determining if the Hintons are entitled to double rent, the trial judge should address such factors as whether the Hintons gave proper notice to the Vices to quit the property, whether the Vices held over, whether the Hintons made a timely request for double rent pursuant to the limitation period, and whether waiver or estoppel applies. If the trial court concludes that the Hintons are entitled to double rent it shall calculate it pursuant to Miss.Code Ann. § 89-7-25 (1972). The issue of double rent is remanded to the trial court for proceedings consistent with this opinion.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF PERRY COUNTY IS AFFIRMED AS TO ITS ORDER OF EVICTION AGAINST THE APPELLANTS. THE CASE IS REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION REGARDING DOUBLE RENT. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
MCMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, MYERS, PAYNE, AND THOMAS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. CHANDLER, J., NOT PARTICIPATING.