MODIFIED OPINION ON MOTION FOR REHEARING
CARLTON, J.,
for the Court:
¶ 1. The motion for rehearing is granted. This Court’s original opinion is withdrawn, and this opinion is substituted in lieu thereof. This case involves our appellate judicial review[1] of an administrative executive board decision to determine if the Mississippi State Oil and State Oil and Gas Board (Board) decision is supported by substantial evidence.[2]
¶2. Maxwell Energy Inc. (Maxwell) filed an appeal in the Jefferson Davis County Chancery Court of an order of the Board that allowed the operator of a proposed oil and gas well, Tellus Operating Group LLC (Tellus),[3] to charge statutory “alternate charges” to each “nonconsenting owner” of drilling rights, Maxwell included, who did not timely agree in writing to *335 exercise one of its statutory options to participate in drilling a proposed unit well in search of oil and gas.[4] The chancery court reversed the Board’s order, finding that the Board’s decision that Tellus offered Maxwell reasonable terms was unsupported by substantial evidence, and that Maxwell had in fact agreed in writing to participate in the drilling of the well.
¶ 3. The current procedural posture before this Court reflects that Tellus then appealed, raising the following issues: (1) whether the Board’s finding that Tellus satisfied the statutory requirements for the “force integration” of Maxwell’s interest with alternate charges by offering reasonable terms is supported by substantial evidence, and (2) whether the Board correctly rejected Maxwell’s argument that Maxwell could avoid alternate charges by simply sending Tellus a check for its share of the costs to drill the well, rather than agreeing in writing to the reasonable terms that are required by statute. Tellus alleges that because substantial evidence existed to support the Board’s order, this Court should reverse the decision of the chancery court and reinstate the Board’s order.[5]
¶ 4. We acknowledge that the procedural history of this matter before the Board reflects that in September 2006, Tellus filed a petition with the Board to form a drilling unit to drill a new well, the Chianti Well No. 1 (Chianti Well), in Jefferson Davis County, Mississippi. Maxwell owned drilling rights involved with the drilling and operation of the well and drilling unit at issue, but Maxwell gave no consent to Tellus to drill or operate a well involving its interests and drilling rights. Tellus then asked the Board to form the drilling unit pursuant to Mississippi’s force-integration statute, Mississippi Code Annotated section 53-3-7 (Rev.2003).[6] Tellus also requested the Board to authorize Tellus to charge each nonconsenting owner the alternate charges that are allowed by subsection (2) of section 53-3-7.[7] At the time Tellus filed its petition, the record reflects that the owners of approximately ninety-six percent of the drilling rights in the proposed drilling unit had agreed in writing to lease, to farm out, or to participate in the Chianti Well. However, Maxwell constituted a working-interest owner who had not agreed.[8]
*336 ¶ 5. The Board found that Tellus offered Maxwell reasonable terms. However, upon Maxwell’s appeal of the Board’s decision, the chancellor disagreed, finding the terms unreasonable and reversing the decision of the Board. Upon finding that the chancellor applied an erroneous standard of review, thereby resulting in an arbitrary decision, we find error in the chancery court’s judgment, and we reverse and render. See Tex. Pac. Oil Co. v. Petro Grande, Inc., 328 So.2d 660, 663 (Miss.1976) (appellate court will affirm where the Board’s decision is supported by substantial evidence).
FACTS
¶ 6. On September 15, 2006, Tellus filed a petition with the Board to “force integrate, with alternate charges, a drilling unit for a proposed gas well, approve an exception well and an exception location, and grant related relief[.]” Tellus asked the Board to form the unit by force integrating all owners and interests, charging each nonconsenting owner of drilling rights in the unit the “alternate charges” allowed by Mississippi Code Annotated section 53-3-7(2).
¶ 7. As required before assessing alternate charges against a nonconsenting owner, and before Tellus filed its petition with the Board; Tellus notified Maxwell by letter of the information required by section 53-3-7(2)(a) and offered the three following statutory options that are prescribed by section 53-3-7(2)(a)(v): a written agreement to lease out on reasonable terms, or to farm out, or to participate in the cost and risk of developing and operating the proposed unit well. The participation offer was for an owner to sign an operating agreement and authority for expenditure (AFE). The operating agreement offered to Maxwell was a standard industry form agreement addressing not only costs chargeable for drilling and operating, but other matters such as liability, royalties, taxes, and such.
¶ 8. Maxwell contested Tellus’s petition to assess alternate charges, and Maxwell took the position that Tellus failed to offer reasonable terms or negotiate in good faith. Maxwell asked that the Board not allow Tellus to charge Maxwell interest with any alternate charges. More specifically, on October 10, 2006, Maxwell filed a notice of contest of Tellus’s petition with the Board, alleging that Tellus failed to negotiate with Maxwell in good faith and asking the Board to remove Maxwell’s interest from any alternate charges.
¶ 9. The Board heard Tellus’s petition at its October 2006 meeting. Tellus presented evidence and two witnesses in support of its petition. D.W. Maxwell, the owner of Maxwell Energy, testified in opposition, but he did not offer any exhibits into evidence, nor did he call any other witnesses. Following the hearing, the Board entered an order on November 1, 2006, which granted Tellus’s petition and determined that the evidence presented at the hearing established that Tellus satisfied all of the statutory requirements of section 53-3-7(2) to force integrate the unit and to allow Tellus to charge Maxwell and any other nonconsenting owners with statutory alternate charges recoverable out of production, if any.[9] The order concluded by stating:
Each non-consenting owner shall be afforded the opportunity to participate in the development and operation of the [w]ell in the pooled unit as to all or any *337 part of said owner’s interest on the same cost basis as the consenting owners by agreeing in writing to pay that part of the costs of such development and operation chargeable to said non-consenting owner’s interest, or to enter into such other written agreement with the operator as the parties may contract, provided such acceptance in writing is filed with the Board within twenty (20) days after this [o]rder is filed for record with the Board.
(Emphasis added). The order included the statutory language required by section 53-3-7(2)(g), providing that Maxwell possessed twenty days after the Board’s order was entered in which to accept and agree in writing to one of the three statutory offers by Tellus, or enter into “such other written agreement with [Tellus] as the parties may contract.”
¶ 10. The record reflects Maxwell failed to accept or agree in writing to any of the three statutory options offered and entered into no other written agreement with Tellus. By letter dated November 14, 2006, Maxwell instead notified Tellus, and also the Board, of its agreement to voluntarily integrate its interest in the unit and to participate and join in the costs of the development, to the extent of Maxwell’s own calculation of its estimated proportional share of the all the associated costs. Specifically, the letter stated:
[Maxwell] hereby agrees in writing to voluntarily integrate all of its interests in the unit ... [and] hereby elects in writing to participate and join in on the same cost basis as the other consenting owners for its share of the cost and risk of developing and operating of the ... unit ... insofar and only insofar as the same relates to Maxwell’s leasehold interest covering mineral interests which are subject to alternate risk charges, and hereby agrees in writing to pay its pro rata share of all the costs associated therewith.
Maxwell sent a check to Tellus in the amount of $18,277.94 along with the above described letter that explained that the check was for payment of Maxwell’s “proportionate share of the dry hole costs for the drilling of the ... well.” The letter stated that Maxwell also agreed
to advance its share of completion costs upon election by Tellus or its affiliates to set casing for a completion attempt and by notifying Maxwell in writing of such election and request for payment of completion costs for Maxwell’s share of such costs.
¶ 11. In response, Tellus returned the check to Maxwell with a November 21, 2006 letter. In the letter, Tellus notified Maxwell that the letter and check were insufficient and nonbinding, and failed to constitute compliance with the Board’s decision and that to be deemed a consenting owner, Maxwell needed to sign, date, and return the documents previously submitted to Maxwell: the joint operating agreement and the authority for expenditure. Clearly, Maxwell failed to accept Tellus’s offer. Moreover, Maxwell’s counteroffer failed contain or address the various issues and provisions set forth in the standard form operating agreement provided to it by Tel-lus. Thq record reflects that Tellus gave no consent to the terms offered by Maxwell.
¶ 12. On December 27, 2006, Maxwell appealed the Board’s order to the Jefferson Davis County Chancery Court. The chancery court reversed the Board’s order, finding that the terms that Tellus offered to Maxwell were not reasonable terms and that Maxwell had agreed to participate in the drilling of the well. However, in so doing, the chancellor utilized an erroneous standard of review. We find that the chancellor should have reviewed whether *338 the Board’s decision was supported by substantial evidence, instead of rendering its own de novo decision as to the reasonableness of the terras offered to Maxwell by Tellus. See Boyles v. Miss. State Oil & Gas Bd., 794 So.2d 149, 152 (¶ 6) (Miss.2001).[10]
STANDARD OF REVIEW
¶ 13. This Court employs a well-settled standard when reviewing a decision of the Board. The Board’s order will only be reversed where the decision is (1) beyond the Board’s legal power, (2) violates some statutory or constitutional right of the complaining party, (3) is arbitrary and capricious, or (4) is not supported by substantial evidence. Id.
DISCUSSION
A. Whether the Board’s finding that Tellus offered Maxwell reasonable terms is supported by substantial evidence.
B. Whether Maxwell’s argument that it agreed in writing to participate in the drilling of the well is based on an incorrect interpretation and application of the statute.
¶ 14. As acknowledged, Tellus seeks a reversal of the chancery court’s decision and a reinstatement of the order of the Board. Tellus asserts that the Board’s order is supported by substantial evidence, and Maxwell failed to timely (or at all) agree to exercise one of its statutory options, including failing to agree in writing to the terms offered by Tellus that the Board found to be reasonable terms.[11] Tellus contends that the evidence clearly established that it satisfied all of the statutory requirements for the force integration, thus allowing Tellus to charge Maxwell the statutory alternate charges for the cost of production applicable to Maxwell as a nonconsenting owner. Additionally, Tellus argues that Maxwell’s assertion that Maxwell agreed in writing to the terms Tellus offered is based on Maxwell’s erroneous interpretation of the alternate-charges provision of the force-integration statute. Tellus contends that such an interpretation conflicts with precedent, as well as the Board’s past interpretations and applications of the statute. Tellus argues that such erroneous interpretation undermines the overall legislative purpose of the statute, and Tellus asserts that the Board’s decision is supported by substantial evidence. Upon appellate review, and as previously acknowledged herein, we find that the decision of the Board is supported by substantial evidence in the record, and that the chancellor applied an erroneous standard when reviewing the decision of the Board. See Boyles, 794 So.2d at 152 (¶ 6).
¶ 15. As acknowledged, “the term ‘nonconsenting owner’ shall mean an owner of drilling rights which the owner has not agreed, in writing, to integrate in the drilling unit.” Miss.Code Ann. § 53-3-7(l)(c). In the context of Mississippi’s statutory scheme of “force integration” of drilling rights into operating units, such owners are subject to imposition of “alternate charges” or risk penalties. Miss. *339 Code Ann. § 53-3-7(2). The statutory alternate charges, or nonconsent penalties, are “designed to ensure that nonparticipating owners do not benefit from the successful outcome of risks they do not take.” Waller Bros., Inc. v. Exxon Corp., 836 F.Supp. 363, 371 (S.D.Miss.1993). Without the statutory alternate charges, noncon-senting owners of drilling rights included in a producing well would benefit from that revenue without participating in the costs, liability, or other risks involved.[12]
¶ 16. Section 53-3-7(2)(a) states:
In the event that one or more owners owning not less than thirty-three percent (33%) of the drilling rights in a drilling unit voluntarily consent to the drilling of a unit well thereon, and the operator has made a good faith effort to (i) negotiate with each nonconsenting owner to have said owner’s interest voluntarily integrated into the unit, (ii) notify each nonconsenting owner of the names of all owners of drilling rights who have agreed to integrate any interests in the unit, (iii) ascertain the address of each nonconsenting owner, (iv) give each nonconsenting owner written notice of the proposed operation, specifying the work to be performed, the location, proposed depth, objective formation and the estimated cost of the proposed operation, and (v) offer each nonconsenting owner the opportunity to lease or farm out on reasonable terms or to participate in the-cost and risk of developing and operating the unit well involved on reasonable terms, by agreeing in writing, then the operator may petition the board to allow it to charge alternate charges (alternate to and in lieu of the charges provided for in subsection (1)(b) of this section).
(Emphasis added). As shown, this section prescribes three statutory options that operators can offer to nonconsenting owners before petitioning the Board to allow the operator to charge alternative charges: (1) a written agreement to lease, or (2) farm out, or (3) participate in the cost and risk of developing and operating the proposed unit well. See Miss.Code Ann. § 53-3-7(2)(a)(v). If the operator fails to enter into an agreement with an owner, the operator may then petition the Board to form the proposed drilling unit, permit the proposed well, and allow the recovery of alternate charges out of each nonconsenting owner’s share of the production. Id. The Board then holds a hearing to determine if the operator has offered to the noncon-senting owner the three statutory options on reasonable terms. Id. If the Board finds that the operator has complied with the statute, the Board enters an order to that effect. Id. Section 53-3-7(2)(g) provides that the nonconsenting owner possesses twenty days after the Board’s order is entered to accept and agree in writing to one of the three statutory options offered, or to “enter into such other written agreement with the operator as the parties may contract.”
¶ 17. As acknowledged, after Tel-lus and Maxwell failed to reach an agreement, Tellus petitioned the Board to form the proposed drilling unit. Maxwell argues that it appeared at the hearing before the Board on October 18, 2006, and then it agreed in writing on November 14, 2006, within twenty days of the Board’s November 1, 2006 order, to integrate its interest in the drilling unit voluntarily and to “join *340 in on the same cost basis as the other consenting owners for its share of the cost and risk of developing and operating of the ... unit.” Maxwell also submits that it tendered a check to Tellus in the amount of $18,277.94 for its proportionate share of the dry-hole costs for drilling the well and agreed in writing to advance its share of the completion costs to Tellus. The record reflects that Maxwell’s response failed to constitute an acceptance of one of the three statutory options offered, and Maxwell’s letter and check offering to pay its pro rata costs of drilling the hole for the well failed to constitute an agreement in accordance with section 53—3—7(2)(g)-[13]
¶ 18. Under section 53-3-7(2)(g), Maxwell possessed twenty days after the Board’s order was entered to accept and agree in writing to one of the three statutory options offered, or enter into “such other written agreement with [Tellus] as the parties may contract.” See Miss.Code Ann. 53-3-7(2)(g). The record reflects, however, the Maxwell failed to accept and agree in writing to any of the three statutory options offered by Tellus, nor did it enter into any other written agreement with Tellus. Instead, the record reflects that Maxwell unilaterally tendered a letter to the Board and to Tellus offering new terms: to voluntarily integrate all of its interests in the unit; to participate and join in on the same cost basis as the other consenting owners for its share of the cost and risk of developing and operating the unit. See generally Prudential Ins. Co. of Am. v. Stewart, 969 So.2d 17, 22 (¶ 17) (Miss.2007) (discussing counteroffer and acceptance of contract). Tellus never agreed to the terms prepared by Maxwell in his letter. Maxwell also failed to sign the participation agreement sent by Tellus, and thus Maxwell failed to voluntarily agree to integrate its interests, develop the lands as a drilling unit, and join in the proposed unit for the well. The record supports the Board’s finding that Maxwell therefore failed to comply with the statutory requirements to become a consenting owner. Miss.Code Ann. § 53—3—7(1)(a).
¶ 19. In examining section 53-3-7(2), we find no fourth option exists wherein an owner can become a consenting owner, and thereby avoid alternate charges, by simply unilaterally tendering an offer of new terms, or counteroffer, that gain no acceptance from the operator.[14] Moreover, an application of contract law to this case reflects that no agreement or binding contract was formed since the offeree failed to accept the terms of the offeror. See Vice v. Hinton, 811 So.2d 335, 338 (¶ 12) (Miss.Ct.App.2001). As a result, Maxwell’s letter and check tendered to Tellus fail to constitute an acceptance of any of the three statutory options Tellus offered. Clearly, the letter fails to consti *341 tute a written agreement with Tellus, since Tellus did not accept the offer made in the letter.[15] See generally Stewart, 969 So.2d at 22 (¶ 17).
¶ 20. With respect to legislative purpose, Mississippi’s force-integration statute, section 53-3-7, allows for recovery of alternate charges from nonconsenting owners who would otherwise not be liable for costs or risks associated with drilling and operating a well, but would benefit from others’ efforts in extracting oil and gas from their land.[16] Hence, section 53-3-7 establishes legal authority for the formation of a unit to drill an oil and gas well, even though the owners of the drilling rights in the lands that comprise the proposed unit have not entered into a written agreement to form the unit, drill the well, and pay and bear the costs and risks to do so. The statute allows the Board to form a drilling unit by “force integrating” all owners and tracts in the proposed drilling unit. The purpose of the force-integration statute is to foster, encourage, and promote the development, production, and utilization of oil and gas, prevent waste, avoid the drilling of unnecessary wells, provide for a greater ultimate recovery of oil and gas, and protect and enforce the correlative rights of the owners. Miss.Code Ann. §§ 53-1-1, 53-3-5, 53-3-7(1)(a) (Rev.2003).
¶ 21. Upon review of the Board’s decision herein, this Court, like the chancellor below, is limited to determining if substantial evidence supported the Board’s decision finding that the terms offered to Maxwell by Tellus constituted reasonable terms. The chancellor erred, however, by applying an incorrect standard of review, reweighing the evidence, and rendering its own de novo decision of reasonableness, without giving the required deference to the statutory authority of the Board to make such a decision. See Boyles, 794 So.2d at 152 (¶ 6).
¶ 22. After our review, we find substantial evidence in the record to support the Board’s order finding that Tellus offered Maxwell the three prescribed statutory options on reasonable terms, thus satisfying the statutory requirements for force integration. Since Maxwell failed to agree to one of the offered statutory options or enter into another agreement with Tellus, then Tellus is entitled to recover alternate charges from the nonconsenting owner herein, Maxwell.[17] As a result, we reverse the chancellor’s decision and render an order reinstating the judgment of the Board.[18]
¶ 23. THE JUDGMENT OF THE JEFFERSON DAVIS COUNTY CHANCERY COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ.,BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Adams v. Miss. State Oil & Gas Bd., 2012-CA-01070-SCT, 139 So.3d 58, 63, 2014 WL 657384, at *3 (¶ 8) (Miss. Feb. 20, 2014) (standard of review).

. See Miss.Code Ann. § 53-3-119 (Rev.2003) (Any person adversely affected by any rule, regulation, or order made by the state oil and gas board can appeal to the chancery court).

.Tellus is an independent oil and gas exploration and production company headquartered in Ridgeland, Mississippi. Tellus operates hundreds of oil and gas wells in Mississippi.

. See Miss.Code Ann. § 53-3-7(1)(c), (2)(a) (Rev.2003).

. Mississippi Code Annotated section 53-3-7 established the authority of the Board to require pooling as a valid exercise of the state’s police power. Superior Oil Co. v. Foote, 214 Miss. 857, 875-76, 59 So.2d 85, 93 (1952).

. Section 53-3-7(1)(a) provides:
When two (2) or more separately owned tracts of land are embraced within an established drilling unit or when there are separately owned interests in all or part of an established drilling unit the persons owning the drilling rights therein and the rights to share in the production therefrom may validly agree to integrate their interests and to develop their lands as a drilling unit. Where, however, such persons have not agreed to integrate their interests the board may, for the prevention of waste or to avoid the drilling of unnecessary wells, require such persons to integrate their interests and to develop their lands as a drilling unit. All orders requiring such pooling shall be made after notice and hearing, and shall be upon terms and conditions that are just and reasonable, and will afford to the owner of each tract the opportunity to recover or receive his just and equitable share of the oil and gas in the pool without unnecessary expense.

. Section 53—3—7(1)(c) defines nonconsenting owner as "an owner of drilling rights which the owner has not agreed, in writing, to integrate in the drilling unit.”

. Maxwell owned less than a one percent working interest in the proposed well unit based on oil and gas leases that it acquired.

. The Board entered a revised order on November 28, 2006, which simply added clarifying language to the original order but did not change any of the findings in the original order.

. Upon review, an appellate court is not to substitute its opinion for the opinion of the Board where the Board’s decision is supported by substantial evidence. Adams, 139 So.3d at 62, 2014 WL 657384, at *3 (¶ 8); see also Miss.Code Ann. § 53-3-119 (appeals to chancery court).

. See Miss.Code Ann. § 53—3—7(2)(a) (providing three statutory options that operators can offer).

. We recognize that ‘‘[w]hen the drilling unit for a well is 'force-integrated' under [section] 53-3-7, the well operator may recover from a non-consenting owner only those costs of development or production that are (1) actually incurred, (2) necessary, and (3) reasonable.” TXG Intrastate Pipeline Co. v. Grossnickle, 716 So.2d 991, 1007 (¶ 38) (Miss.1997).

. The letter tendered by Maxwell is not an enforceable agreement. Under Mississippi law, an owner of drilling rights whose interest is force integrated is not personally liable for any costs to drill, complete, and operate a well unless the owner has signed a written agreement with contractual undertakings that obligate the owner to pay. That type of agreement is usually an operating agreement. Huffco Petroleum Corp. v. Massey, 834 F.2d 540, 542-43 (5th Cir.1987) (where the operator and the owner never reached agreement on and signed a joint operating agreement, the owner was not obligated to pay any costs); Sonat Exploration Co. v. Mann, 785 F.2d 1232, 1235 (5th Cir.1986) (owner who signed an AFE but not an operating agreement was not obligated to pay any costs); Hunt Energy Corp. v. Crosby-Miss. Res. Ltd., 732 F.Supp. 1378, 1380 (S.D.Miss.1989) (because of the lack of a written operating agreement between the operator and the force-integrated owner, the owner was not obligated to pay any costs).

. See Miss.Code Ann. § 53-3-7(2)(a) & (g); Waller Bros., 836 F.Supp. at 367-69; Hunt Energy, 732 F.Supp. at 1380.

. A contract is not formed until an offeree accepts the terms. Vice, 811 So.2d at 338 (¶ 12).

. Gadeco, LLC v. Indus. Comm’n of N.D., 812 N.W.2d 405, 407-08 (N.D.2012); Bruce M. Kramer & Patrick H. Martin, The Law of Pooling and Unitization, § 12.01 (2010); Williams & Meyers, Manual of Terms, Oil and Gas Law at 659 (2011).

. See Miss.Code Ann. § 53-3-7(2)(a).

. Regarding the standard of review applicable to the findings and decision of the Board, see generally Boyles, 794 So.2d at 152 (¶ 6); Tex. Pac. Oil Co., 328 So.2d at 663 (appellate court will affirm where the Board’s decision is supported by substantial evidence).